92 Cal.Rptr.2d 80 (2000)
22 Cal.4th 260
991 P.2d 165
The PEOPLE, Plaintiff and Appellant,
v.
Daniel William HATCH, Defendant and Respondent.
In re Daniel William Hatch, on Habeas Corpus.
No. S074630.
Supreme Court of California.
January 31, 2000.
*83 Gil Garcetti, District Attorney, George M. Palmer, Patrick D. Moran, Brent Riggs and Diana L. Summerhayes, Deputy District Attorneys, for Plaintiff and Appellant.
John J. Reed, Tustin, and Eliseo D.W. Gauna, Van Nuys, for Defendant and Respondent.
BROWN, J.
The primary issue before us is whether the constitutional prohibitions against double jeopardy bar retrial after a dismissal under section 1385 of the Penal Code.[1] We conclude they do not under the facts of this case.

Factual And Procedural Background
Defendant Daniel William Hatch was originally charged by information with seven sex offenses: (1) two counts of forcible penetration by a foreign object (§ 289, subd. (a); counts 1 and 2); (2) two counts of forcible oral copulation (§ 288a, subd. (c); counts 3 and 6); and (3) three counts of forcible rape (§ 261, subd. (a)(2); counts 4, 5 and 7). All charges arose out of an incident that occurred on September 3, 1996. At the time of the incident, Hatch was almost 21 years old, and the alleged victim, Doratee L., was almost 16 years old.
At trial, Doratee L. testified that she met Hatch at a shopping mall in August 1996. Hatch gave her his phone number, and she subsequently called him three or four times. She met Hatch again on September 1 at the same mall where they first met. After talking a bit, Hatch and Doratee L. went to a park and engaged in some kissing and sexual foreplay. At this time, she told him she was a virgin and successfully rebuffed his sexual advances after telling him he was "going kind of fast."
Two days later, Doratee L. invited Hatch to come to her house around midnight. Although her family was home, she did not tell them he was coming over. When Hatch arrived that evening, Doratee L. met him outside. After talking briefly, Hatch and Doratee L. went to the carport and started kissing.
Doratee L. then testified that Hatch, without her consent, orally copulated her twice, placed his finger(s) in her vagina twice and had intercourse with her three times. Doratee L. further testified that Hatch used some physical force to commit these acts even though she cried continuously and frequently told Hatch it "hurt" and to "stop." She also stated that she *84 attempted to push Hatch off and "scoot" away many times to no avail and even burned his hand with a cigarette. Finally, she claimed she did not scream because she was afraid Hatch would come after her or her family.
On the other hand, Doratee L. also testified that she smoked a cigarette with Hatch toward the end of the encounter without attempting to escape or get help, even though she stood several feet away from Hatch who was sitting down. She also conceded that Hatch never threatened her or her family, never hit her and never displayed any weapons.
The encounter ended when Doratee L.'s father came outside and called her name, and Hatch let go of her. Doratee L. then put on her shorts, grabbed her underwear and Hatch's pants and shorts and ran into the house. She did not, however, say anything to her father.
After running inside, Doratee L. went to the bathroom and cried. Soon after, her sister spoke to her. Although Doratee L. did not immediately tell her sister what happened because she was allegedly afraid of Hatch and felt embarrassed, she eventually told her sister about the alleged assault. Her sister contacted the police, and Doratee L. went to the hospital.
At the hospital, Jeanie Zandstra, a forensic nurse and sexual assault examiner, conducted an examination of Doratee L. Zandstra testified that the excessive tearing, abrasions and bleeding in the genital area suffered by Doratee L. indicated forcible sexual assaultand not consensual sex.
Doratee L. also spoke with Detective Katherine Watson at the hospital. At trial, Detective Watson largely corroborated Doratee L.'s testimony. Detective Watson further testified that she interviewed Hatch who claimed he had consensual sex with Doratee L. He alleged Doratee L. asked him to come over that evening to have sexual intercourse. He also told Detective Watson he repeatedly asked Doratee L. if she wanted to stop but she did not tell him to stop. Later in the interview, Hatch could not remember Doratee L.'s name and conceded that he may not have heard her protests and wished she would have screamed louder. He also claimed Doratee L. bled because she was a virgin and because his teeth may have cut her when he orally copulated her.
Officer John Lembi interviewed Hatch after Detective Watson. According to Officer Lembi, Hatch stated he "didn't pay attention" even if Doratee L. had told him to stop. Hatch also allegedly told Officer Lembi he had used methamphetamine the day before the incident.
Hatch did not testify but presented several character witnesses, including a former girlfriend who testified that he stopped when she rejected his sexual advances. Hatch also called Zandstra who had examined him on the same day as the alleged assault. She testified that his body showed no signs of a burn injury. Hatch also presented Deborah Kilgore, a registered nurse and qualified expert on sexual assault. Kilgore testified that Doratee L.'s injuries were not serious and were consistent with first-time consensual intercourse. Kilgore also observed that, according to Zandstra's examination notes, Doratee L. admitted the incident did not involve "weapons," "physical blows by hand or feet," "grabbing, grasping or holding," "physical restraints," "bites," "choking," "burns" or "threats of harm." In fact, Doratee L. identified no "method" used by Hatch to inflict her "injuries."
In rebuttal, Dr. Deborah Stewart, a professor of pediatrics and adolescent medicine and Medical Director of the Child Abuse Services Team of Orange County, testified as an expert witness. She claimed Doratee L.'s injuries were not consistent with first-time consensual intercourse. Rather, they indicated forcible sexual assault. At the close of testimony, Hatch stipulated to the omission of any instructions *85 on lesser included or lesser related offenses. Hatch also did not move for a judgment of acquittal pursuant to section 1118.1.
After several days of deliberation, the jury deadlocked on all counts. On counts 1 through 3, a majority favored a not guilty verdict. On the remaining four counts, a majority favored a guilty verdict.[2] With the consent of the prosecutor and defense counsel, the trial court declared a mistrial.
At a hearing later that day, the trial court asked for comments from both sides. The prosecutor requested a retrial. Defense counsel countered that none of the jurors he spoke with believed Doratee L.'s "behavior was consistent with someone who was being pressured and forced into doing something against their will." When the court asked the prosecutor about additional evidence to be presented at a retrial, the prosecutor stated she would: (1) introduce evidence of heart attacks suffered by Doratee L. and her father allegedly caused by Hatch's actions; (2) introduce a tape recording of Detective Watson's interview with Hatch; and (3) call Dr. Stewart in the case-in-chief.
In response, the trial court remarked that the case was "well-tried" and that the jury was "smart" and arguably favored the prosecution. The court then ordered "the prosecution at an end" and "dismissed" the case "in the interest of justice" because "there is no reason to believe another jury would reach a verdict in this case one way or the other." According to the court, the minute order would reflect "that the court feels no reasonable jury would convict this defendant; that means twelve votes for guilty on any of the counts that were alleged against him in the information...." The actual minute order stated: "The court finds that no reasonable jury would convict the defendant of the charges alleged in the information based on the evidence presented in court." The court later clarified that it dismissed the case on its own motion pursuant to section 1385.
One day after the dismissal, the prosecutor refiled charges against Hatch pursuant to section 1387. In addition to the seven counts previously charged, the second information added nine new counts based on the same incident: (1) one count of forcible rape (§ 261, subd. (a)(2)); (2) two counts of forcible penetration of a minor by a foreign object (§ 289, subd. (h)); (3) two counts of forcible oral copulation of a minor (§ 288a, subd. (b)(1)); and (4) four counts of unlawful sexual intercourse with a minor (§ 261.5, subd. (c)).
After pleading not guilty, Hatch filed a petition for habeas corpus in superior court alleging that the second prosecution was barred on double jeopardy grounds. The petition was assigned to a different judge from the one who originally dismissed the charges. After reviewing the relevant pleadings and transcripts, the judge granted the petition because the language dismissing the original charges was similar to "the language in People v. Johnson [(1980) 26 Cal.3d 557, 162 Cal.Rptr. 431, 606 P.2d 738]" indicating "there was not sufficient evidence to convict the defendant."
The prosecution appealed both the section 1385 dismissal and the order granting the habeas corpus petition. The Court of Appeal affirmed. Relying on Hudson v. Louisiana (1981) 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (Hudson), and Mannes v. Gillespie (9th Cir.1992) 967 F.2d 1310 (Mannes), certiorari denied (1993) 506 U.S. 1048, 113 S.Ct. 964, 122 L.Ed.2d 121, the court held that the dismissal was equivalent to an acquittal for legal insufficiency of the evidence and barred retrial. The court also held that the dismissal was not appealable.
*86 We granted review to consider whether: (1) the trial court had authority under section 1385 to dismiss for legal insufficiency of the evidence after the case had been submitted to the jury; (2) the court, assuming it had authority to do so, intended to dismiss for legal insufficiency; and (3) a section 1385 dismissal for legal insufficiency is appealable under section 1238.

Discussion
In this appeal, the People challenge both the order granting the habeas corpus petition and the original order dismissing the case under section 1385. As explained below, we reverse the grant of the habeas corpus petition on the ground the trial court did not dismiss for legal insufficiency of the evidence even though it had the power to do so. Because we conclude the dismissal was not equivalent to an acquittal for purposes of double jeopardy,[3] we do not address the propriety of the section 1385 dismissal or reach the issue of whether a section 1385 dismissal for legal insufficiency is appealable.[4]

A. The Trial Court's Power to Dismiss Under Section 1385.
Asserting that section 1118.1 is the exclusive statutory basis for court-ordered acquittals, the People claim section 1385 does not permit dismissals for legal insufficiency of the evidence. The People, however, misread the statutes and ignore the relevant case law.
Originally codified in 1872, section 1385 states in relevant part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." "Dismissals under section 1385 may be proper before, during and after trial." (People v. Orin (1975) 13 Cal.3d 937, 946, 120 Cal.Rptr. 65, 533 P.2d 193 (Orin).) Because the concept of "furtherance of justice" (§ 1385) is amorphous, we have enunciated some general principles to guide trial courts when deciding whether to dismiss under section 1385. Courts must consider "the constitutional rights of the defendant, and the interests of society represented by the People," and "[a]t the very least, the reason for dismissal must be `that which would motivate a reasonable judge.'" (Orin, supra, 13 Cal.3d at p. 945, 120 Cal.Rptr. 65, 533 P.2d 193, italics omitted, quoting People v. Curtiss (1970) 4 Cal.App.3d 123, 126, 84 Cal.Rptr. 106.) Under these principles, trial courts historically have had the power to acquit for legal insufficiency of the evidence pursuant to section 1385. (See People v. Belton (1979) 23 Cal.3d 516, 520-521, 153 Cal.Rptr. 195, 591 P.2d 485 (Belton) [prior to the passage of §§ 1118 and 1118.1, § 1385 provided the only means for obtaining a dismissal "on the ground that the prosecution had failed to prove a prima facie case"]; see also People v. Superior Court (Howard) (1968) 69 Cal.2d 491, 505, 72 Cal.Rptr. 330, 446 P.2d 138 (Howard) [a trial court may dismiss an action "where the evidence is insufficient as a matter of law"].)
Nonetheless, the People contend that trial courts no longer have this power after the enactment of section 1118.1 in 1967. According to the People, section 1118.1which mandates an acquittal before submission of a case to the jury if the court determines there is insufficient evidence to support a conviction as a matter of laweliminates the court's power to *87 make that determination under section 1385. We disagree.
Because the trial court's power to dismiss "in furtherance of justice" is statutory, the Legislature may eliminate it. (See People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 518, 53 Cal.Rptr.2d 789, 917 P.2d 628.) "To do so, the Legislature need not expressly refer to section 1385." (Ibid.) Nonetheless, we will not abrogate a court's power under section 1385 "absent a clear legislative direction" to do so. (People v. Thomas (1992) 4 Cal.4th 206, 210, 14 Cal.Rptr.2d 174, 841 P.2d 159; see also People v. Williams (1981) 30 Cal.3d 470, 482, 179 Cal.Rptr. 443, 637 P.2d 1029 (Williams) ["Section 1385 permits dismissals in the interest of justice in any situation where the Legislature has not clearly evidenced a contrary intent"].)
No legislative intent to abrogate the trial court's power to dismiss for legal insufficiency of the evidence after a case has been submitted to the jury exists here. Section 1118.1 provides that: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." By its terms, section 1118.1 only governs the court's power to acquit for legal insufficiency of the evidence "before the case is submitted to the jury for decision." (§ 1118.1, italics added.) Nothing in section 1118.1 purports to eliminate the court's power under section 1385 to acquit for legal insufficiency after the case is submitted to the jury. Indeed, the mere use of mandatory language in section 1118.1 does not make section 1385 inapplicable. (See Williams, supra, 30 Cal.3d at p. 483, 179 Cal.Rptr. 443, 637 P.2d 1029.)
The People also point to nothing in the legislative history of section 1118.1 suggesting an intent to abolish the trial court's power to dismiss for legal insufficiency of the evidence after submission of a case to the jury.[5] Absent evidence of such an intent, we will not eliminate this power. (See Williams, supra, 30 Cal.3d at p. 482, 179 Cal.Rptr. 443, 637 P.2d 1029; see also Agresti, supra, 5 Cal.App.4th at p. 606, 7 Cal.Rptr.2d 353 ["a dismissal may sometimes have the same effect as an acquittal to dispose of criminal charges"]; cf. People v. Lagunas (1994) 8 Cal.4th 1030, 1038-1039, 36 Cal.Rptr.2d 67, 884 P.2d 1015, fn. 6 (Lagunas) [implying that the court's grant of a new trial motion after a guilty verdict because the evidence was insufficient as a matter of law may bar retrial]; People v. Trevino (1985) 39 Cal.3d 667, 698-699, 217 Cal.Rptr. 652, 704 P.2d 719 (Trevino) [barring retrial because the court, in the context of a new trial motion after a guilty verdict, correctly found the evidence legally insufficient and had erroneously denied defendant's section 1118.1 motions], overruled on other grounds in People v. Johnson (1989) 47 Cal.3d 1194, 1219, 255 Cal.Rptr. 569, 767 P.2d 1047.)
The People's reliance on section 1387 is also misplaced.[6] Section 1387 merely establishes that two dismissals pursuant to section 1385, 859b, 861, 871 or 995, bar retrial on felony charges except in limited circumstances. (See § 1387; People v. Superior Court (Martinez) (1993) 19 *88 Cal.App.4th 738, 744, 23 Cal.Rptr.2d 733 [section 1387 "is sometimes loosely described as establishing a two-dismissal rule"].) It does not preclude a single section 1385 dismissal from barring retrial. In fact, we have construed a single section 1385 dismissal as a bar to retrial under certain circumstances despite section 1387. (See, e.g., People v. Fields (1996) 13 Cal.4th 289, 311, 52 Cal.Rptr.2d 282, 914 P.2d 832 (Fields) [the dismissal of greater charges in order to obtain a guilty verdict on lesser included or related charges bars retrial on the greater charges].)
Finally, we are guided by common sense. Trial courts undoubtedly have the power to acquit for legal insufficiency of the evidence before submission to a jury. (See §§ 1118.1, 1118.2.) Neither the evidence at trial nor the defendant's interest in "avoiding both the stress of repeated prosecutions and the enhanced risk of erroneous conviction" changes after the case has been submitted to a jury. (Fields, supra, 13 Cal.4th at p. 298, 52 Cal.Rptr.2d 282, 914 P.2d 832.) As such, when a trial court rules that the evidence is insufficient as a matter of law should not determine whether that ruling operates as a bar to double jeopardy. (See United States v. Martin Linen Supply Co. (1977) 430 U.S. 564, 574, 97 S.Ct. 1349, 51 L.Ed.2d 642 (Martin Linen Co.) [a defendant's need for protection against deficient prosecutions "is essentially identical both before the jury is allowed to come to a verdict and after the jury is unable to reach a verdict"].)
Indeed, the United States Supreme Court has long held that "what constitutes an `acquittal' is not to be controlled by the form of the judge's action." (Martin Linen Co., supra, 430 U.S. at p. 571, 97 S.Ct. 1349.) Rather, appellate courts "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." (Ibid.) If a trial court rules the evidence is insufficient as a matter of law, then the ruling bars retrial even if it is patently erroneous or the court has no statutory authority to make it. (See Sanabria v. United States (1978) 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 [a trial court finding of legal insufficiency based on an erroneous foundation is still an acquittal for double jeopardy purposes]; People v. Valenti (1957) 49 Cal.2d 199, 203, 209, 316 P.2d 633 [a trial court dismissal for legal insufficiency made without statutory authorization bars retrial under the California Constitution], disapproved on other grounds in People v. Sidener (1962) 58 Cal.2d 645, 647, 25 Cal.Rptr. 697, 375 P.2d 641; see also Fong Foo v. United States (1962) 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 [a ruling by a trial court acquitting a defendant bars retrial even if the ruling is "egregiously erroneous" and the court lacks the power to make the ruling].) Accordingly, it makes no sense to prohibit trial courts from acquitting for legal insufficiency after the case has been submitted to a jury, and we decline to do so.

B. The Trial Court's Section 1385 Dismissal.
Although the trial court had the power to dismiss for insufficient evidence as a matter of law after submission to the jury, we will not construe its dismissal as an acquittal for double jeopardy purposes absent clear evidence the court intended to exercise this power. Because the record here does not clearly indicate such an intent, no double jeopardy bar to retrial exists.
The Fifth Amendment of the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." This clause applies to the states through the due process clause of the Fourteenth Amendment (Benton v. Maryland (1969) 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707), and protects defendants from multiple trials. (United *89 States v. Wilson (1975) 420 U.S. 332, 342, 95 S.Ct. 1013, 43 L.Ed.2d 232 (Wilson).) Article I, section 15, of the California Constitution offers similar protection: "Persons may not twice be put in jeopardy for the same offense...." Because the California Constitution "is a document of independent force and effect that may be interpreted in a manner more protective of defendants' rights than that extended by the federal Constitution," we are guided by those decisions interpreting the double jeopardy clauses of both the United States and California Constitutions. (Fields, supra, 13 Cal.4th at p. 298, 52 Cal.Rptr.2d 282, 914 P.2d 832.)
Over 20 years ago, the United States Supreme Court held that the Fifth Amendment precludes retrial if a court determines the evidence at trial was insufficient to support a conviction as a matter of law. (Burks v. United States (1978) 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1.) Thus, an appellate ruling of legal insufficiency is functionally equivalent to an acquittal and precludes a retrial. (See id. at pp. 16-17, 98 S.Ct. 2141.) An analogous trial court finding is also an acquittal for double jeopardy purposes. (Hudson, supra, 450 U.S. at p. 42, 101 S.Ct. 970; Martin Linen Co., supra, 430 U.S. at p. 575, 97 S.Ct. 1349.) Where a court merely "disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence," however, a reversal or dismissal on that ground does not bar retrial. (Tibbs v. Florida (1982) 457 U.S. 31, 42, 45-46 fn. 22, 102 S.Ct. 2211, 72 L.Ed.2d 652, (Tibbs).)
We have interpreted the double jeopardy clause of the California Constitution in a similar manner. Because the standard for determining the legal sufficiency of evidence is the same under both federal and California law, the "rule of Burks applies to trials conducted in our courts." (People v. Pierce (1979) 24 Cal.3d 199, 210, 155 Cal.Rptr. 657, 595 P.2d 91 (Pierce).) We have also held that the reversal of a conviction based on a reweighing of evidence does not bar retrial under the California Constitution. (See People v. Serrato (1973) 9 Cal.3d 753, 761, 109 Cal.Rptr. 65, 512 P.2d 289, overruled on other grounds in People v. Fosselman (1983) 33 Cal.3d 572, 583, fn. 1, 189 Cal. Rptr. 855, 659 P.2d 1144; see also Veitch v. Superior Court (1979) 89 Cal.App.3d 722, 730-731, 152 Cal.Rptr. 822 [granting a new trial based on a reweighing of the evidence does not bar retrial], cert. den. (1979) 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306.)
In applying these principles, we have not distinguished between trial and appellate court determinations of legal insufficiency because both courts must apply the substantial evidence standard when making this determination. (See Trevino, supra, 39 Cal.3d at pp. 698-699, 217 Cal. Rptr. 652, 704 P.2d 719 [barring retrial because the trial court correctly found the evidence insufficient as a matter of law despite a guilty verdict]; Pierce, supra, 24 Cal.3d at p. 210, 155 Cal.Rptr. 657, 595 P.2d 91 [an appellate determination that evidence is insufficient as a matter of law precludes retrial].) Specifically, both trial and appellate courts must review "the whole record in the light most favorable to the judgment" and decide "whether it discloses substantial evidence ... such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (People v. Johnson, supra, 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738.) Under this standard, the court does not "`ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Jackson v. Virginia (1979) 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560.)
*90 Although a trial court may apply the substantial evidence standard when dismissing pursuant to section 1385, it usually does not. Indeed, the standard for dismissal under section 1385 is quite broad and permits dismissal under a variety of circumstances. For example, a court may dismiss under section 1385 if it believes "the only purpose to be served by a trial or a retrial is harassment of the defendant ... notwithstanding the fact that there is sufficient evidence of guilt, however weak, to sustain a conviction on appeal." (Howard, supra, 69 Cal.2d at p. 504, 72 Cal.Rptr. 330, 446 P.2d 138.) Thus, a section 1385 dismissal may not even "involve a consideration of the merits of the cause." (Agresti, supra, 5 Cal. App.4th at p. 604, 7 Cal.Rptr.2d 353.)
Because section 1385 dismissals often are not based on the insufficiency of the evidence as a matter of law, we believe these dismissals should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard.[7] Specifically, the record must show that the court viewed the evidence in the light most favorable to the prosecution and concluded that no reasonable trier of fact could find guilt beyond a reasonable doubt. (See Lagunas, supra, 8 Cal.4th at p. 1038, fn. 6, 36 Cal.Rptr.2d 67, 884 P.2d 1015 [declining to construe the trial court's grant of a new trial as an acquittal for legal insufficiency because the record indicates the court did not use the "`substantial evidence' standard"].) Absent such a showing, we will assume the court did not intend to dismiss for legal insufficiency and foreclose reprosecution.
In doing so, we do not intend to impose rigid limitations on the language trial courts may use to dismiss for legal insufficiency of the evidence pursuant to section 1385. Certainly, courts need not restate the substantial evidence standard or use certain "magic words" whenever they determine that the evidence is insufficient as a matter of law. We merely ask trial courts to make their rulings clear enough for reviewing courts to confidently conclude they viewed the evidence in the light most favorable to the prosecution and found that no reasonable trier of fact could convict.
This simple request properly balances the competing interests embodied in the constitutional prohibitions against double jeopardy. Although repeated prosecutions unfairly burden a defendant and increase the risk of conviction through sheer perseverance, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." (Wade v. Hunter (1949) 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974; see also Stone v. Superior Court (1982) 31 Cal.3d 503, 522, 183 Cal.Rptr. 647, 646 P.2d 809 [recognizing the "important public interest in finally determining whether [a defendant] committed" an offense].) For example, this right does "not have the same force" when there is sufficient evidence to support a conviction. (Tibbs, supra, 457 U.S. at p. 42, 102 S.Ct. 2211.) In that case, retrial simply "affords the defendant a second opportunity to seek a favorable judgment" and does not violate the constitutional prohibitions against double jeopardy. (Id. at p. 43, 102 S.Ct. 2211, fn. omitted.) By barring retrial only when a trial court clearly makes a finding of legal insufficiency, we remain faithful to these governing principles. (See Richardson v. United States (1984) 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 ["the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy"].) Our decision also reduces the likelihood of future confusion *91 over the effect of a section 1385 dismissal by creating an incentive for parties to seek clarification at the time of dismissal.
Applying this rule to these facts, we conclude retrial is permitted because the record does not clearly show an intent by the trial court to dismiss for legal insufficiency of the evidence. Our analysis begins with the trial court's minute order which merely states that "no reasonable jury would convict ... based on the evidence presented in court." (See § 1385 ["The reasons for the dismissal must be set forth in an order entered upon the minutes"].) This order does not indicate that the court viewed the evidence in the light most favorable to the prosecution. Moreover, the use of the word "would" rather than "could" suggests a reweighing of evidence rather than an application of the substantial evidence standard. (See Schlup v. Delo (1995) 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 ["the use of the word `could' focuses the inquiry on the power of the trier of fact to reach its conclusion"; "the use of the word `would' focuses the inquiry on the likely behavior of the trier of fact"].) Taken together, these ambiguities make it impossible for us to conclude that the court intended to dismiss for lack of sufficient evidence as a matter of law.
The reporter's transcript bolsters our conclusion.[8] (See People v. Smith, supra, 33 Cal.3d at p. 599, 189 Cal.Rptr. 862, 659 P.2d 1152 [conflicts in the clerk's and reporter's transcripts regarding the meaning of a § 1385 dismissal should be resolved on a case-by-case basis].) Like the minute order, nothing in the reporter's transcript indicates the trial court viewed the evidence in the light most favorable to the prosecution. Rather, the court's inquiries about additional evidence and its remarks on the quality of the trial presentations and the apparent pro-prosecution bent of the jury suggest an assessment of the strength of the evidence. The court's comments on the improbability of an unanimous verdict of guilt do not suggest otherwise. Indeed, the mere likelihood of disagreement among rational men "is not in itself equivalent to a failure of proof by the State...." (Johnson v. Louisiana (1972) 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152; see also Tibbs, supra, 457 U.S. at p. 42, fn. 17, 102 S.Ct. 2211 [holding that "disagreements among jurors or judges do not themselves create a reasonable doubt of guilt"].) Accordingly, we decline to construe the section 1385 dismissal in this case as an acquittal for double jeopardy purposes.
Our decision in Trevino does not compel a different result. In Trevino, the trial court granted defendant's motion for a new trial under section 1181 after previously denying his motions for a judgment of acquittal under section 1118.1. (See Trevino, supra, 39 Cal.3d at pp. 695-696, 217 Cal.Rptr. 652, 704 P.2d 719.) Although the standard for granting a new trial is different from the standard for entering a judgment of acquittal, the court expressly granted a new trial under the substantial evidence standard.[9] (See id. at p. 694, 217 Cal.Rptr. 652, 704 P.2d 719.) In light of the court's irreconcilable rulings on the sections 1118.1 and 1181 motions, we independently reviewed the sufficiency of the evidence and concluded that the court should have entered a judgment of acquittal barring retrial. (See Trevino, supra, 39 Cal.3d at pp. 696-698, 217 Cal. Rptr. 652, 704 P.2d 719.) Unlike Trevino, the trial court in this case did not make irreconcilable rulings. Thus, we do not *92 have to review the evidence at trial to determine the true nature of the court's ruling and need only review the record to determine whether the court, in fact, dismissed for legal insufficiency of the evidence. In any event, an independent review of the record establishes there was sufficient evidence to support a conviction. Indeed, Hatch does not even argue the evidence was insufficient as a matter of law.
Hudson is also distinguishable. In Hudson, the United States Supreme Court barred retrial because the trial judge granted a new trial motion based on the legal insufficiency of the evidence at trial. (Hudson, supra, 450 U.S. at pp. 44-45, 101 S.Ct. 970.) The court relied on the judge's comments on the dearth of evidence and his amazement over the guilty verdict as well as the Louisiana Supreme Court's own characterization of the judge's actions. (See id. at pp. 43-44, 101 S.Ct. 970.)[10] Unlike Hudson, the record in this case is ambiguous and suggests that the trial court dismissed the case based on a reweighing of the evidence. As such, the Fifth Amendment does not bar retrial. (See Tibbs, supra, 457 U.S. at p. 42 & fn. 17,102 S.Ct. 2211.)
Finally, Mannes, even if controlling, is inapplicable. In Mannes, the trial court dismissed murder charges pursuant to section 1385 after a mistrial. In dismissing these charges, the court stated there was "insufficient evidence" to establish certain elements of the crime and "no likelihood that a retrial on these charges will result in a unanimous verdict of guilty of murder." (Mannes, supra, 967 F.2d at p. 1314.) Concluding that the phrase "insufficient evidence" is a term of art and absent a contrary indicationmeans the evidence was insufficient to support a conviction as a matter of law, the Ninth Circuit Court of Appeals held that the dismissal was equivalent to an acquittal and barred retrial under the Fifth Amendment. (Id. at pp. 1315-1316.) In contrast, the trial court in this case never used the term "insufficient evidence."
Accordingly, we hold that retrial is not barred and the People may proceed with the prosecution of Hatch on the refiled charges. (See People v. Williams (1997) 56 Cal.App.4th 927, 933-934, 66 Cal. Rptr.2d 329 [holding that the prosecution may add additional charges after a mistrial absent a finding of legal insufficiency of the evidence].) In doing so, we do not reach the remaining issue: whether a section 1385 dismissal for legal insufficiency is appealable. Of course, our conclusion that such a dismissal is equivalent to an acquittal for double jeopardy purposes does not automatically bar appellate review. (See United States v. DiFrancesco (1980) 449 U.S. 117, 132, 101 S.Ct. 426, 66 L.Ed.2d 328 "[T]he prohibition against multiple trials is the `controlling constitutional principle' (United States v. Wilson, [supra,] 420 U.S. at [p.] 346 [95 S.Ct. 1013, 43 L.Ed.2d 232])" and "[t]he double jeopardy focus ... is not on the appeal but on the relief that is requested."].) Indeed, the United States Supreme Court has held that the double jeopardy clause only prohibits multiple trials and does not preclude appeals from postconviction rulings made by a trial court. (See Martin Linen Co., supra, 430 U.S. at pp. 569-570, 97 S.Ct. 1349 ["where a government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended"]; Wilson, supra, 420 U.S. at p. 344, 95 S.Ct. 1013 ["where there is no threat of ... successive prosecutions, the Double Jeopardy Clause is not offended"]; see also United States v. Sharif (9th Cir.1987) 817 F.2d *93 1375, 1376 [prosecution may appeal a postconviction dismissal for legal insufficiency despite the double jeopardy bar]; see also Curry v. Superior Court (1970) 2 Cal.3d 707, 716-717, 87 Cal.Rptr. 361, 470 P.2d 345 [the California Constitution only protects defendants from multiple prosecutions or trials].) We therefore leave the resolution of this issue for another day.

Disposition
For the foregoing reasons, we reverse the order granting the habeas corpus petition. Because we do not address the propriety or appealability of the original section 1385 dismissal, we dismiss review as to the People's direct appeal. Finally, we remand for further proceedings consistent with our opinion.
GEORGE, C.J., MOSK, J., KENNARD, J., WERDEGAR, J., and CHIN, J., concur.
Concurring Opinion by BAXTER, J.
I concur in the judgment and in the reasoning of the majority insofar as the majority hold that in dismissing the action pursuant to the authority of Penal Code section 1385 the trial court did not rule that the evidence at trial was insufficient as a matter of law to support a conviction. I do not join in the unnecessary dictum expressing the view that a trial court ruling on the legal insufficiency of the evidence is necessarily equivalent to an appellate ruling to that effect, must therefore be deemed an acquittal, and, even if erroneous, inevitably bars retrial. Those issues are not before the court.
Moreover, I question the assumption underlying that dictum. A ruling, whether of a trial court or an appellate court, that the evidence is insufficient to support conviction of a charged criminal offense is not an acquittal. Only the trier of fact may acquit a defendant of a charged criminal offense. The ruling may be equivalent to an acquittal for double jeopardy purposes if made before the matter is submitted to the jury and the jury has been discharged. It is so because retrial is barred by double jeopardy principles. However, if an erroneous trial court ruling that the evidence is insufficient as a matter of law follows a jury verdict convicting the defendant and is reversed on appeal, no retrial is necessary. The verdict is reinstated. No double jeopardy bar arises. In these circumstances the ruling is neither an acquittal nor the equivalent of an acquittal.
And, as here, when the trial court, with the consent of the parties declares a mistrial because the jury is unable to reach a verdict, reversal of a subsequent erroneous dismissal in the belief that the evidence was insufficient as a matter of law, would not be the cause of a retrial. Rather, once an erroneous dismissal pursuant to Penal Code section 1385 is reversed, the mistrial order stands as the cause of retrial. Neither this court nor the United States Supreme Court has considered whether the state and the federal constitutional double jeopardy bars preclude retrial in this circumstance.
NOTES
[1] All further statutory references are to the Penal Code.
[2] In the final ballot, the jury voted as follows: "Count I, eleven to one [not guilty] "Count II, ten to two [not guilty] "Count III, nine to three [not guilty] "Count IV, seven to five [guilty] "Count V, eight to four [guilty] "Count VI, eight to four [guilty] "Count VII, eight to four [guilty]."
[3] In this opinion, we use the term "acquittal" to refer "to a disposition based upon a determination of the merits" that bars further prosecution. (Agresti v. Department of Motor Vehicles (1992) 5 Cal.App.4th 599, 604-605, 7 Cal.Rptr.2d 353, fn. omitted (Agresti).) Under this definition, an acquittal does not necessarily preclude appellate review.
[4] Neither party disputes the appealability of the order granting the habeas corpus petition. (See § 1506.) The parties only dispute the appealability of the section 1385 dismissal to the extent it was based on the insufficiency of the evidence as a matter of law. The parties do not dispute that the dismissal was otherwise proper.
[5] Indeed, the primary purpose behind section 1118.1 was to give defendants the power to move for an acquittal for insufficient evidence as a matter of lawand not to limit the trial court's powers under section 1385. (See Belton, supra, 23 Cal.3d at pp. 520-521, 153 Cal.Rptr. 195, 591 P.2d 485.)
[6] Section 1387, subdivision (a), states in relevant part: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995...."
[7] Our decision today does not affect the various statutory bars to retrial, including sections 1023 and 1387.
[8] Because the minute order and reporter's transcript may be harmonized, we do not address the case where the order or transcript clearly evidences an intent to dismiss for legal insufficiency while the other does not. (See People v. Smith (1983) 33 Cal.3d 596, 599, 189 Cal.Rptr. 862, 659 P.2d 1152.)
[9] The trial court in Trevino restated the substantial evidence standard in its entirety. (See Trevino, supra, 39 Cal.3d at p. 694, 217 Cal.Rptr. 652, 704 P.2d 719.)
[10] The trial judge stated "`that there was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict'"; and commented: "`[H]ow they concluded that this defendant committed the act from that evidence when no weapon was produced, no proof of anyone who saw a blow struck, is beyond the Court's comprehension.'" (Hudson, supra, 450 U.S. at p. 43, 101 S.Ct. 970.) The Louisiana Supreme Court concluded that "[t]he trial judge herein ordered a new trial pursuant to LSA-C. Cr. P. art. 851(1) solely for lack of sufficient evidence to sustain the jury's verdict." (Ibid.)