Filed 3/14/23  P. v. Crisp CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F083355 |
| Plaintiff and Respondent, | (Super. Ct. No. CF91438575) |
| v. | |
| JOHN MICHAEL CRISP, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell, III, Judge.

Timothy E. Warriner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, Erin Doering, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Peña, Acting P. J., Smith, J. and Meehan, J.

# INTRODUCTION

In 1992, a jury convicted appellant John Michael Crisp and codefendants Steven McGrew, Winona Weathers, and Johnnie Bell of first degree murder (Pen. Code,[1] § 187). In addition, the jury found true enhancement allegations alleging McGrew personally used a firearm during the commission of the murder and robbery (§ 12022.5, subd. (a)), and that Crisp, Bell, and Weathers were armed with a firearm during the commission of the murder and robbery (§ 12022, subd. (a)(1)). As to all defendants, the jury further found true a special circumstance alleging that the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)).

Upon a motion for new trial, the trial court modified the verdict by striking the robbery-murder special circumstance, finding that the "jury's verdict with respect to the special circumstance … was contrary to the evidence." Crisp was resentenced to an indeterminate term of 25 years to life in state prison. Following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), Crisp filed a petition for resentencing under section 1170.95.[2] After appointing counsel to represent Crisp, the superior court denied his petition, finding he had failed to make a prima facie showing for relief.

On appeal, Crisp contends the trial court erred in denying his petition for resentencing at the prima facie stage. The Attorney General agrees, as do we. We therefore reverse the trial court's order and remand the matter back to the lower court for further proceedings consistent with this opinion.

---

[1]    All undefined statutory citations are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no significant change in text (Stats. 2022, ch. 58, § 10). Crisp filed his petition prior to this renumbering, and he therefore referred to the statute as section 1170.95 in his petition.

## PROCEDURAL HISTORY

In 1992, Crisp was convicted of first degree murder (§ 187), first degree robbery (§ 211/212.5, subd. (a)), and assault with a firearm (§ 245, subd. (a)(2)). In addition, the jury found true an enhancement for the personal use of a firearm (§ 12022, subd. (a)(1)), and a special circumstance alleging the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)).

In 1993, following a motion for new trial (§ 1181), the trial court struck the jury's true finding on the robbery-murder special circumstance, finding insufficient evidence that Crisp had acted with reckless indifference to human life.

On May 17, 2019, Crisp filed a petition for resentencing under former section 1170.95.

On May 22, 2019, the superior court filed an order appointing Crisp's original trial counsel to represent him on his petition for resentencing.

On August 20, 2021, the superior court summarily denied Crisp's petition. The August 20, 2021 minute order states, "The Court finds Prima Facie does not meet the criteria."

Crisp filed a timely notice of appeal.

## STATEMENT OF FACTS

The following statement of facts is derived from this court's nonpublished opinion following Crisp's direct appeal in *People v. Mcgrew* (Apr. 5, 1996, F020046).

> "Deborah Baker was [Johnnie] Bell's girlfriend in December 1990. The two were living together in Hanford …. Baker also knew or had met Crisp, [Steven] McGrew, and [Winona] Weathers. On December 22 she was home when Crisp arrived with his girlfriend Helen Donnel. McGrew and Weathers were already there. While cleaning the back bathroom, Baker overheard Bell and Weathers talking in an adjoining bedroom. The two mentioned people named Paul [William McClelland] and Tonja [Minnick] in Fresno. They planned to go to their home and thought no one else besides Paul and

Tonja would be there. They discussed collection of a debt owed Weathers and the pretext of making a drug purchase. Weathers would take cash to make the staged transaction look convincing. Once there, they would take money and whatever else they could find. Weathers promised that those going with her would get something out of it. The two discussed whether the victims would have weapons on hand and whether to take a nine millimeter weapon. They also discussed the problem of taking care of Tonja while the robbery took place. Baker also heard them talk about whether a right-handed or left-handed person would use the gun.

"McGrew and Crisp eventually joined Weathers and Bell in the bedroom. At that point, Baker left the bathroom. The four were together in the bedroom about 15 to 20 minutes. When they emerged, they left the house. A few minutes later, they returned. Baker noticed Bell, Crisp, and McGrew had changed clothes. Bell and Weathers had handguns. Baker described the weapon Weathers was holding as the type without a cylinder. The gun was silver. Bell's weapon was dark with a cylinder. Bell told Baker the gun was for 'leverage.' Weathers made a similar comment about using a gun as leverage.

[¶] … [¶]

"According to Minnick, on the night of the murder she and McClelland were at their condominium in Fresno at about 2 a.m. when Weathers and Crisp entered using a key she had given Weathers. Weathers said she had $3,000 and wanted McClelland to purchase methamphetamine for her. McClelland agreed, made a telephone call, and left. After McClelland left, Crisp said he was going out to get cigarettes. He returned not long after with McGrew and Bell, whom Weathers introduced as friends from Hanford.

"McClelland called Minnick about 30 to 45 minutes after he left. He told her he was having difficulty obtaining the methamphetamine. Minnick was afraid and asked him to come back. She was concerned because she and Weathers barely spoke, and the men – Bell, McGrew, and Crisp – said nothing. The men stared straight ahead, and on occasion their eyes rolled back showing only the whites.

"McClelland called a second time, about 30 to 45 minutes after the first call, saying he was still having difficulty obtaining the

4.

drugs because he did not have the cash with him for the purchase. McClelland called a third time and told Minnick he would be home shortly and [his brother-in-law Michael] Allen would be with him. Weathers complained about the delay and said she had to take the others back to Hanford. Approximately 30 to 45 minutes after the third call, McClelland returned with Allen. Allen went straight through the house and into the garage. McClelland embraced Minnick, and then motioned for Weathers to go with him into the garage. The two went into the garage while Minnick remained with Bell, Crisp, and McGrew. McClelland opened the door from the garage into the house a short time later, and Weathers entered the house and spoke with Bell and McGrew. Weathers said they should come into the garage to buy their drugs. McGrew complained he would not make a purchase without sampling the product first. He then went into the garage with Bell, joining Weathers, McClelland, and Allen. Crisp remained in the house with Minnick.

"Minnick next heard loud noises from the garage, including Weathers shouting, 'Because you owe me $1,500.' She also heard her say 'Shoot him! Shoot him!' just before she heard two gun shots. Minnick ran to the garage with Crisp behind her. Allen was moving quickly around the corner and pushing things down as if trying to escape from someone. He had blood on [his] face. McClelland was lying on the floor with McGrew standing over him. Weathers and Bell also were still in the garage. McGrew was holding a small brown revolver and pointed it at Minnick as she entered.

"Minnick hurriedly turned around in an attempt to go back into the house. She slipped and fell. Crisp grabbed her and pulled her into the house. He told her what occurred in the garage had nothing to do with her, only McClelland. He threatened they would return and kill her if she called police. Minnick attempted to call police from the same telephone she had used earlier when speaking with McClelland, but the cord appeared to have been cut. She heard another loud noise from the garage, looked in, and saw the garage door had been pulled down and was on McClelland. She also heard a male voice say more than once, 'Get the dope.' Weathers ran back into the house and fled out the front door. As she left, she told Minnick not to call the police or she would return and kill her. …

5.

[¶] … [¶]

"At trial Allen denied he was present at the shooting. He also denied discussing the matter with police and telling an officer a different version of what occurred that night.

"Detective Chilberto testified he took a detailed statement from Allen the day after the homicide. According to Chilberto, Allen said McClelland picked him up at his home and he rode with him to McClelland's home. As they entered, McClelland told him to 'watch my back.' Allen saw Weathers, Minnick, and a man he did not recognize sitting at the kitchen table. Another man, possibly Hispanic, was sitting on the couch. Allen went into the garage with McClelland. Two men, one Caucasian and one Hispanic, entered the garage with Weathers. Allen identified the Caucasian as McGrew and the Hispanic as Bell. McGrew said, 'Let's see the dope,' and McClelland responded, 'Let's see the money.' McGew then displayed a .22 caliber handgun. Allen asked what was happening. Bell said not to worry about it and proceeded to strike Allen with a chrome .25 caliber pistol. The blow hit him in the face below the right eye. Allen dropped to one knee and heard McGew order McClelland to his knees. McClelland asked Weathers what was going on, and she yelled 'Fuck you Paul, you owe me money. Shoot him, shoot him.' Allen then saw McGew extend his right arm and shoot McClelland in the head."

## DISCUSSION

Crisp raises several claims on appeal. First, he contends that the trial court reversibly erred in summarily denying his petition for resentencing, because he is entitled to resentencing as a matter of law. Second, Crisp asserts that the trial court's order appointing Michael Berdinella to represent him was not served upon the attorney, resulting in the failure to effectively appoint Berdinella. Finally, despite arguing that he was completely without counsel, Crisp contends that his trial counsel was constitutionally ineffective in representing him on his petition.

The Attorney General concedes that Crisp "appears to be entitled to have his murder conviction vacated and to be resentenced" and therefore, agrees that the trial court

6.

erroneously denied Crisp's petition. The Attorney General contends that Crisp's remaining contentions are therefore moot.

We accept the parties' concession of error as to the denial of Crisp's petition at the prima facie stage. The trial court should have issued an order to show cause, and to the extent necessary, have held an evidentiary hearing on that order. For the reasons discussed below, we will remand this matter back to the lower court for further proceedings.

## I.     Background:  Senate Bill No. 1437

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine ... to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  Senate Bill No. 1437 accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.) Second, to amend the felony murder rule, the bill added section 189, subdivision (e), which provides the following:

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)

7.

Finally, Senate Bill No. 1437 added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra,* 10 Cal.5th at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter."

To seek relief under former section 1170.95, a petitioner must file a petition in the superior court averring that:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (Former §§ 1170.95, subd. (a)(1)-(3), see also (b)(1)(A).) Additionally, the petition must indicate "[w]hether the petitioner requests the appointment of counsel." (*Id.* subd. (b)(1)(C).)

If a petition fails to comply with these requirements, "the court may deny the petition without prejudice to the filing of another petition." (Former § 1170.95, subd. (b)(2).)  Where the petition complies with subdivision (b)'s requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made "a prima facie showing" for relief. (*Id*. subd. (c).)

## II. Analysis

### A. The Trial Court Erred by Concluding Crisp Had Failed to Make a Prima Facie Showing for Relief

The jury found true a special circumstance alleging Crisp had acted as a major participant in the commission of the underlying robbery with reckless indifference to human life. However, the trial court struck the special circumstance following a hearing on trial counsel's motion for new trial. Following an independent review of the evidence, the trial court concluded that the jury's true finding on the special circumstance was not supported by the evidence.

Once the trial court struck the special circumstance, "in the eyes of the law, the original finding[] never existed." (*People v. Barboza* (2021) 68 Cal.App.5th 955, 965.) Accordingly, we agree with the parties' assertion that the trial court erred in concluding that Crisp had failed to make a prima facie showing for resentencing relief. Because Crisp's petition contained all necessary averments required under former section 1170.95, the trial court should have issued an order to show cause and set a hearing on that order.

### B. The Remedy

Crisp contends that he is entitled to automatic vacatur of his murder conviction because the trial court's finding amounts to a "prior finding by a court … that [he] did not act with reckless indifference to human life." The Attorney General concedes that "[g]iven the trial court's express finding, [Crisp] *appears* to be entitled to have his murder conviction vacated and to be resentenced accordingly. (§ 1172.6, subd. (d)(2)." (Italics added.) In the same breath however, the Attorney General suggests that this court should reverse the court's order denying Crisp's petition "and remand the matter with the direction to the superior court to issue an order to show cause as to why [Crisp's] murder conviction should not be vacated and [Crisp] should not be resentenced accordingly."

9.

It is unclear whether the Attorney General is expressly conceding that Crisp is entitled to resentencing relief under the automatic vacatur provision. There would be no need to direct the lower court to issue an order to show cause and to hold a hearing on that order if Crisp is entitled to automatic vacatur of his murder conviction and resentencing. Such a procedure would only cause unnecessary delay.

Under section 1172.6, subdivision (d)(2), a petitioner who was convicted of felony murder is entitled to automatic vacatur of the murder conviction and resentencing on any remaining counts of conviction if there is "a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony." No cases have directly addressed whether a trial court's finding of insufficient evidence on a felony-murder special circumstance following a section 1181 motion constitutes " 'a prior finding by a [court] that the petitioner did not act with reckless indifference to human life or was not a major participant in the [underlying] felony,' thus triggering the superior court's duty to vacate the murder conviction and resentence the petitioner under section 1170.95, subdivision (d)(2)." (*People v. Clayton* (2021) 66 Cal.App.5th 145, 149.)[3] However, several cases are instructive.

In *People v. Ramirez* (2019) 41 Cal.App.5th 923 (*Ramirez*), Ramirez, the petitioner, was convicted of first degree felony murder with a special circumstance alleging that the murder occurred during the commission of a robbery. (*Id*. at p. 926.) Following our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788

---

[3] In *People v. Barboza, supra*, 68 Cal.App.5th at pp. 960-961, the Fourth District Court of Appeal, Division 3, addressed whether a special circumstance allegation, stricken upon a motion for new trial, rendered the defendant ineligible for resentencing relief as a matter of law under former section 1170.95. Here, Crisp contends the court's act of striking the special circumstance triggered the automatic vacatur and resentencing provisions in section 1172.6, subdivision (d)(2).

10.

(*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), Ramirez successfully challenged the jury's special circumstance finding on the basis that there was insufficient evidence to support the conclusion that he had acted as a major participant in the commission of the robbery who acted with reckless indifference to human life. (*Ramirez*, at pp. 926-927.) The special circumstance finding provided the only basis for murder liability. (*Ibid.*)

On appeal from the denial of his petition for resentencing under former section 1170.95, the appellate court accepted the parties' concession that the trial court had erred in denying the petition and sent the matter back with directions to the lower court to grant Ramirez's petition. (*Ramirez, supra,* 41 Cal.App.5th at pp. 930, 933.) In so doing, the court declined the Attorney General's request to direct the lower court to conduct further proceedings, including the issuance of an order to show cause. (*Id.* at p. 930.) The appellate court observed that former section 1170.95, subdivision (d)(2) requires mandatory vacatur where there has been a prior court finding that the defendant did not act as a major participant with reckless indifference to human life. (*Ramirez*, at p. 932.) The appellate court's finding on review of Ramirez's habeas corpus petition constituted a "prior court finding" within the meaning of subdivision (d)(2). (*Ramirez*, at p. 933.)

In *People v. Hampton* (2022) 74 Cal.App.5th 1092 (*Hampton*), Hampton was convicted of murder and two counts of robbery. The jury was unable to reach a verdict on a robbery-murder special circumstance allegation. (*Id.* at p. 1097.) The prosecutor moved to dismiss the allegation for insufficient evidence, and the trial court granted the prosecutor's motion pursuant to section 1385.[4] (*Hampton*, at p. 1097.) Hampton

---

[4]  Under section 1385, a trial judge may order an action dismissed " 'in furtherance of justice,' " either "before, during or after trial." (*Mannes v. Gillespie* (9th Cir. 1992) 967 F.2d 1310, 1314.) However, the court's authority to dismiss a special circumstance is circumscribed by section 1385.1, which prohibits a judge from striking or dismissing a special circumstance, "Notwithstanding Section 1385 or any other provision of law." (§ 12022.53, subd. (h).)

11.

subsequently filed a petition for resentencing under former section 1170.95, which was granted. (*Hampton*, at p. 1098.) The People appealed, arguing that the dismissal of the special-circumstance allegation was not an acquittal which would entitle Hampton to automatic resentencing relief. (*Id.* at p. 1096.)

Our colleagues in the Third District affirmed the trial court's order granting Hampton's petition, finding that the dismissal of the special circumstance for "insufficient evidence" was equivalent to an acquittal, thereby rendering Hampton automatically eligible for resentencing relief under subdivision (d)(2) of section 1170.95. (*Hampton, supra,* 74 Cal.App.5th at pp. 1106-1107.) The court explained that "[s]ection 1385 dismissals should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard." (*Id.* at p. 1104; *People v. Hatch* (2000) 22 Cal.4th 260, 271.) According to the appellate court, the term "insufficient evidence" is a term of art; it "means the evidence was insufficient to support a conviction *as a matter of law*." (*Hampton*, *supra*, p. 1104, italics added.)

In contrast, in *People v. Nieber* (2022) 82 Cal.App.5th 458 (*Nieber*), the petitioner appealed the trial court's denial of his petition for resentencing. Nieber alleged that the magistrate's ruling finding insufficient evidence of a special circumstance allegation following his preliminary hearing was a "prior finding by a court" which triggered the mandatory resentencing provision. (*Id.* at p. 462.) The appellate court disagreed, affirming the denial of Nieber's petition for resentencing. (*Ibid.*)

The appellate court explained that "the type of 'prior finding by a court' must, like a ' "prior finding by a ... jury" ' be the type of finding that challenges whether the People have demonstrated guilt beyond a reasonable doubt." (*Nieber*, *supra*, 82 Cal.App.5th at p. 473.) However, the role of a magistrate at a preliminary hearing is circumscribed. (*Ibid.*) The magistrate's role is limited to determining "whether there is sufficient evidence to move a case forward" rather than " 'the guilt or innocence of the

12.

defendant.' " (*Ibid.*) Thus, the magistrate's ruling, including an order of dismissal, is not a bar to another prosecution for the same offense. (*Ibid.*) Indeed, the magistrate's opinion as to the guilt or innocence of the accused " ' "is of no legal significance." ' " (*Id.* at p. 474.)

The instant case falls somewhere along the continuum between a magistrate's finding following a preliminary hearing (*Nieber*), and a trial court's finding that there is insufficient evidence to support a special circumstance as a matter of law (*Hampton*).[5] The trial court struck the jury's true finding on the special circumstance allegation following a motion for new trial. As discussed further below, a motion for new trial may be granted following an independent examination of the evidence by the trial court, or upon finding that the evidence is insufficient as a matter of law to support the conviction.

In consideration of a motion for new trial based on grounds asserting that the jury's verdict is contrary to the law or evidence (§ 1181, subd. (6)), the judge, acting as a " '13th juror,' " determines whether the charges have been proven beyond a reasonable doubt. (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.) In this scenario, a trial court independently examines all of the evidence and, if it is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the verdict is "contrary to the evidence." (*People v. Veitch* (1982) 128 Cal.App.3d 460, 467.) Retrial is not barred if the trial court grants the motion on this basis, because in determining the charges have not been sufficiently proven, the judge is acting as the lone holdout juror for acquittal. (*Hudson v. Louisiana* (1981) 450 U.S. 40, 45, fn. 5.) "[T]he grant of a section 1181(6) motion is the equivalent of a mistrial caused by a hung jury." (*Porter v. Superior Court*, *supra*, at p. 133.)

---

[5] The trial court here did not strike the special circumstance pursuant to section 1385. The parties agreed that the trial court was prohibited from striking the jury's finding on the special circumstance "in furtherance of justice," pursuant to section 1385.1.

13.

Conversely, if a motion for new trial is granted on grounds that the evidence is insufficient, as a matter of law, to support the conviction, retrial is barred. (*Hudson v. Louisiana, supra*, 450 U.S. at p. 43, citing *Burks v. United States* (1978) 437 U.S. 1, 11, 17 [it makes "no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient" or that "a defendant has sought a new trial as one of his remedies, or even as the sole remedy"]; accord, *People v. Eroshevich* (2014) 60 Cal.4th 583, 591.)

In this scenario, the trial court applies the substantial evidence test. In deciding whether substantial evidence supports a verdict, a court does not " ' "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1038, fn. 6, citing *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319, original italics.)

Here, although there is some ambiguity in the record, the trial court struck the special circumstance, finding that the jury's verdict was contrary to the evidence.[6] In so doing, the court implicitly made credibility determinations and resolved contested facts,

---

[6] The trial court stated its ruling was made under section 1181, subdivision (7), ostensibly based upon the assumption that doing so would provide Crisp relief without having to grant him a new trial.

This subdivision provides: "When the verdict or finding is contrary to law or evidence, but in any case wherein authority is vested by statute in the trial court or jury to recommend or determine as a part of its verdict or finding the punishment to be imposed, the court may modify such verdict or finding by imposing the lesser punishment without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed." (§ 1181, subd. (7).) Whether the trial court erred in striking the special circumstance on this basis was not challenged by the prosecutor by filing an appeal. It is undisputed that the court's ruling cannot be challenged now.

but it did not conclude the evidence supporting the special circumstance was insufficient as a matter of law. The judge, acting as a "13th juror," independently examined the evidence, and determined that the special circumstance had not been proven beyond a reasonable doubt. (*Porter v. Superior Court, supra,* 47 Cal.4th at p. 133.) Thus, while the trial court found insufficient evidence to support the jury's true finding on the special circumstance, its finding was not tantamount to an acquittal. (See *People v. Hatch, supra*, 22 Cal.4th at pp. 271-272 ["[w]here a court merely 'disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence,' … a reversal or dismissal on that ground does not bar retrial' "].) Indeed, "a court has no authority to grant an acquittal in connection with an 1181 motion." (*People v. Porter, supra*, 47 Cal.4th at p. 133.)

This distinction may prove critical in another case. But that is not so here, since the Attorney General appears to concede that Crisp is entitled to resentencing.

Neither the Attorney General nor the prosecutor below have suggested that new evidence, such as parole suitability hearing transcripts, can and would be proffered at an evidentiary hearing to support Crisp's liability for murder under a still viable theory. They do not expressly concede this point either. The Attorney General merely argues that Crisp was not convicted as the actual killer or as an aider and abettor who acted with express malice. That may be true, but that statement falls short of a clear concession that the special circumstance allegation is the only viable ground for a murder conviction. (See *People v. Guillory* (2022) 82 Cal.App.5th 326, 334 ["[s]ection 1172.6, subdivision (d)(2) [requires] automatic vacatur and resentencing where a special circumstances allegation found to be not true (or the legal equivalent, [citation]) provides the *only* viable ground for a murder conviction"], italics added.)

We do not suggest that the existing record contains evidence supporting the conclusion that Crisp could be convicted of murder under a still valid theory. We raise

this issue only to highlight the fact that the Attorney General's concession does not make sufficiently clear whether he is conceding resentencing is required under the mandatory vacatur provision, *all things considered*.  We will therefore reverse the trial court's order and remand the matter back to the lower court for further proceedings consistent with section 1172.6, including, the appointment of Crisp's original trial counsel.  On remand, the parties may waive an order to show cause hearing and stipulate that Crisp is entitled to resentencing under section 1172.6, subdivision (d)(2).

In light of our conclusion, Crisp's remaining contentions concerning the appointment of his original trial counsel and his claim of ineffective assistance of counsel are moot.

## **DISPOSITION**

The trial court's August 20, 2021 order denying Crisp's petition for resentencing under former section 1170.95 is reversed.  The matter is remanded to the trial court with directions to conduct further proceedings consistent with section 1172.6, including the appointment of Crisp's original trial counsel.