Filed 6/24/14  P. v. Castenda CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G047369 |
|      v. | (Super. Ct. No. 10NF0531) |
| MATTHEW CASTANEDA, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

Defendant Matthew Castaneda appeals from the judgment entered after a jury found him guilty of committing a lewd act on a child under 14 years of age (the lewd act offense) and of committing an aggravated assault on a child under 14 years of age in the form of forcible sodomy (the forcible sodomy offense). Before trial, Castaneda admitted he had suffered a prior felony conviction. He contends the trial court erroneously instructed the jury with a former version of CALCRIM No. 1110 (CALCRIM No. 1110) because it contained language that might have confused the jury and lightened the prosecution's burden of proof as to the lewd act offense. Castaneda further contends the trial court erred by failing to instruct the jury on the victim's withdrawal of consent as to the forcible sodomy offense.

We affirm. The version of CALCRIM No. 1110, given to the jury in this case, properly states the law, is not confusing, and did not lighten the prosecution's burden of proof. Even assuming the trial court had a sua sponte obligation to instruct the jury on withdrawal of consent as to the forcible sodomy offense, any error in failing to give such an instruction was harmless.

## FACTS

### I.

### SUMMARY OF THE PROSECUTION'S EVIDENCE

In early 2010, 12-year-old M. received a message from "Matthew" (later identified as Castaneda) through the profile on the MySpace social Internet Web site that her cousin had set up for her; M.'s MySpace profile stated she was 16 years old. After she received a second message from Castaneda and he sent her a "friend request," she accepted his friend request and started chatting with him online.

2

Castaneda gave M. his phone number and she texted him using her father's cell phone. Castaneda told M. he wanted to get to know her better. He told her that she looked pretty from the picture he had seen of her and asked if she had a boyfriend. He brought up the idea of their meeting in person. Although M. had been unsure about meeting "Matthew," she had developed a "little crush" on him and thought of him as her boyfriend.

On February 17, 2010, M.'s aunt dropped M. off for school, but M. did not go to school. Instead, she went to a friend's house, changed out of her school uniform and into jeans and a shirt, and took a bus from Santa Ana to South Coast Plaza to meet Castaneda as he had proposed on the phone the day before.

After M. arrived at South Coast Plaza, she waited outside for 30 minutes for Castaneda to arrive. After they made contact, Castaneda told M. to follow him. She walked behind him to a bus stop. She asked him where they were going; he told her they were going to Anaheim. They got on a bus but did not talk or sit next to each other. Castaneda listened to music. Thirty minutes later, M. followed Castaneda when he got off the bus and walked to a gas station. He told her to wait while he went into the gas station store and bought a soda. After he came out, Castaneda said, "let's go" and started walking; M. followed him into a park.

Castaneda sat down on a bench inside the park; M. did too. They started talking. M. asked Castaneda about his tattoos. They held hands, which, she testified, made her feel uncomfortable. He put his arm around her. He touched her hands, arm, and "the top part of [her] leg[s]" with his hand. M. moved her hand away from him because she did not feel comfortable. They were at the park about an hour when Castaneda said, "let's go" but did not say where they were going. M. walked with Castaneda out of the park and onto another bus. They sat a seat apart from each other and did not talk. Castaneda listened to music. Twenty minutes later, M. followed Castaneda off the bus and into another park.

3

While at that park, M. went to the restroom and changed into shorts and a shirt. She sat down on a park bench with Castaneda and they talked. M. testified she then told Castaneda she was 12 years old and he laughed in response. Castaneda hugged her. He tried to grab her hand, but she moved it away. He rubbed her legs. They stayed at the park for about 30 minutes before Castaneda said they were going to leave.

Castaneda and M. walked to a motel where he told her to wait outside. Castaneda went into the motel office and rented a room. He returned to M., and told her to go upstairs and he would meet her there. M. complied and saw Castaneda at the top of the stairs; he motioned her toward him. After they entered a room, M. went straight to the bathroom where she stayed for a while because she was scared. She tried to call home on her cell phone, but it "turned off."

Castaneda knocked on the bathroom door a couple of times and asked M. what she was doing. She opened the door and came out of the bathroom. M. testified she had not wanted to be in that motel room and was scared something might happen to her. M. told Castaneda she wanted to leave. He did not say anything, walked toward her, grabbed her, hugged her, and took off her clothes. He then took off his shorts, shirt, and underwear; grabbed her; and threw her on the bed. Castaneda pulled M. toward him on the bed and she told him "no," but he did not stop. She tried to move away from him and pull herself up, but he grabbed her legs, forced them open, and inserted his penis into her vagina.

M. tried to pull herself away, but Castaneda pulled her toward him and sodomized her. She told him that he was hurting her. He told her to stop moving. After he removed his penis, he told her to turn around. Castaneda tried to kiss M. and told her to put her mouth on his penis. M. turned her head away and told him she was not going to do it; he stopped trying to put his penis in her mouth.

When Castaneda returned from the bathroom, he told M. they were going to "do it again." M. said she did not want to and went into the bathroom. Castaneda gave

4

M. a towel and told her to clean up. After they got dressed, M. followed Castaneda out of the motel room and across the street to a bus stop. He took her bus pass from her and ran away.

DNA consistent with Castaneda's genetic profile was found in semen collected on swabs taken from M.'s anus; the frequency of that DNA profile is one in one trillion. Castaneda's DNA profile was also found in swabs taken from M.'s breast and neck. A medical examination of M. showed she suffered, inter alia, lacerations in her genital and anal areas.

II.

SUMMARY OF CASTANEDA'S TESTIMONY

Castaneda was 33 years old in February 2010. He testified M. told him she was 16 years old and never told him she was 12 years old. M.'s and Castaneda's versions of the sequence of events leading up to their entering the motel room largely agree.

After Castaneda and M. entered the motel room, Castaneda testified he sat down on the bed and started watching television. M. went into the bathroom; when she came out, she sat down next to Castaneda and they started kissing. He pulled her in front of him and she did not try to pull away or tell him she was having second thoughts. He undressed her and kissed her. She did not tell him to stop. He picked her up and laid her down. He undressed and put on a condom. Castaneda and M. had sexual intercourse. M. told Castaneda it hurt; he asked her if she wanted to stop and she said no. M. told him she was a virgin, but did not tell him she did not want to have sex; she did not push him away or try to get away from him.

Castaneda asked her to change their positioning so they could "do it from behind." M. got on her knees. Castaneda did not plan to sodomize M., but, as he was trying to penetrate her vagina from behind her, he penetrated her anus by accident. She moved out of the way and told him "not to put it there." Castaneda stopped. M. turned over and lay on her back, and they engaged in vaginal sexual intercourse again.

5

Castaneda and M. got dressed, M. said she needed to go home, and they walked to the bus stop.

## PROCEDURAL HISTORY

Castaneda was charged in an amended information with (1) forcible rape in violation of Penal Code sections 269, subdivision (a)(1) and 261, subdivision (a)(2) (the forcible rape offense); (2) the forcible sodomy offense in violation of Penal Code sections 286, subdivision (c) and 269, subdivision (a)(3); (3) attempted aggravated sexual assault of a child in the form of an attempted commission of oral copulation in violation of Penal Code sections 664, subdivision (a), 269, subdivision (a)(4), and 288a (the attempted oral copulation offense); and (4) the lewd act offense in violation of Penal Code section 288, subdivision (a). The amended information alleged, within the meaning of Penal Code section 667.5, subdivision (b), that Castaneda had suffered a (nonsexual) prior felony conviction for which he served a prison term.

Before trial, Castaneda admitted the prior conviction allegation. The jury found Castaneda guilty of the forcible sodomy offense and the lewd act offense, but could not reach a verdict as to the forcible rape offense and the attempted oral copulation offense. The trial court declared a mistrial as to the forcible rape offense and the attempted oral copulation offense, and later dismissed those counts pursuant to *People v. Hatch* (2000) 22 Cal.4th 260, 273, as "no reasonable trier of fact could find guilt beyond a reasonable doubt." The court sentenced Castaneda to a total prison term of 15 years to life. Castaneda appealed.

## DISCUSSION

### I.

### CALCRIM No. 1110

Castaneda argues the trial court erred by instructing the jury with CALCRIM No. 1110 in connection with the lewd act offense in violation of Penal Code section 288, subdivision (a). Castaneda's argument is without merit.

6

Penal Code section 288, subdivision (a) provides that "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part of member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." The jury was instructed with CALCRIM No. 1110 as follows: "The defendant is charged [in Count 4] with committing a lewd or lascivious act on a child under the age of 14 years [in violation of Penal Code section 228(a)]. This is also a lesser included offense of ct 1 + ct 2. Attempted lewd act is a lesser included offense of ct 3. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] [1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;] [¶] 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of (himself . . . ) or the child; [¶] AND [¶] 3. The child was under the age of 14 years at the time of the act. [¶] The touching need not be done in a lewd or sexual manner. [¶] Someone commits an act willfully when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage. [¶] [Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required.] [¶] [It is not a defense that the child may have consented to the act.] [¶] For the legal definition of attempt, see p. 34."

In his opening brief, Castaneda contends CALCRIM No. 1110 "conflicts with the statutory elements set forth in Penal Code section 288, subdivision (a), because CALCRIM No. 1110 instructed the jury that the 'lewd and lascivious act' required by statute 'need not be done in a lewd manner.'" He argues CALCRIM No. 1110 "effectively deleted an element of the offense from the jury's consideration or misdirected the jury as to the element. The erroneous instruction by the trial court both confused the jury as to the act necessary to violate the statute and lightened the

prosecutor's burden of proving every element of the offense, resulting in the denial of [Castaneda]'s right to due process and a fair trial."

The version of CALCRIM No. 1110, given to the jury in this case, states that in order to convict Castaneda of the lewd act offense, the prosecution had to prove, inter alia, he had committed the act of touching M. "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of (himself . . . ) or [M.]," and further states that act of touching did not necessarily need to have been done in a lewd manner. We conclude the instruction is sufficiently clear and is not internally inconsistent. Castaneda's counsel did not ask the trial court to clarify the portions of CALCRIM No. 1110, which Castaneda now challenges on appeal, and he thus has forfeited this issue. (See *People v. Kelly* (1992) 1 Cal.4th 495, 535 [trial court has no sua sponte duty to revise or improve accepted and correct jury instructions]; *People v. Lewis* (2009) 46 Cal.4th 1255, 1315, fn. 43 [the defendant's failure to object to instructional error below waives issue on appeal unless claim raises issues concerning substantial rights].)

In his opening brief, Castaneda cites *People v. Cuellar* (2012) 208 Cal.App.4th 1067, 1070-1071, in which the appellate court analyzed the same sentence at issue in this case—"[t]he touching need not be done in a lewd or sexual manner"—but in the context of former CALCRIM No. 1120. The appellate court stated, "[t]his provision apparently was intended as a transcription of the long-established rule that touching of a sexual organ is not required for violation of the statute. [Citation.] Instead, the phrase 'lewd and lascivious act' is expansively defined to include any contact with the defendant's body and does not require that the touching be to an intimate part of the body. It is enough that the touching occur with the requisite intent." (*People v. Cuellar*, *supra*, at p. 1071.) The appellate court, however, stated that "[t]aken by itself," the sentence the "'touching need not be done in a lewd or sexual manner'" is at best "unfortunate and possibly confusing." (*Ibid*.) The appellate court urged the Judicial Council of California Advisory Committee on Criminal Jury Instructions to reconsider

8

the language of that sentence and "propose new language that simply states that the touching need not be made to an intimate part of the victim's body, so long as it is done with the required intent." (*Id.* at pp. 1071-1072.)[1]

Notwithstanding its criticism of the instruction, the appellate court in *People v. Cuellar*, *supra*, 208 Cal.App.4th 1067, did not conclude that the trial court erred by giving that instruction to the jury. Instead, the court held that any error in the instruction was harmless, stating: "[T]aken as a whole, we are satisfied that the instruction as given did not mislead the jury in this case. First, virtually all of the touching described in the testimony was sexual, rather than incidental, in nature. And the evidence of defendant's guilt was overwhelming. Besides the thorough testimony of the victim, the jury had before it defendant's confession." (*Id.* at p. 1072.)

Similarly, in this case, virtually all of the touching that occurred between Castaneda and M. was sexual in nature and more than substantial evidence of Castaneda's guilt, as summarized *ante*, was presented at trial. Thus, even if we were to assume the version of CALCRIM No. 1110, given to the jury, was defective, we conclude as did the appellate court in *People v. Cuellar*, *supra*, 208 Cal.App.4th at page 1072, "any error in the instruction was harmless under any standard."

II.

EVEN IF THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON WITHDRAWAL OF CONSENT AS TO THE FORCIBLE SODOMY OFFENSE CONSTITUTED ERROR, ANY SUCH ERROR WAS HARMLESS.

With regard to the forcible rape offense and the forcible sodomy offense, the trial court instructed the jury that, in order to prove Castaneda guilty of each crime,

---

[1] Effective February 26, 2013, the Judicial Council of California Advisory Committee on Criminal Jury Instructions deleted the sentence "[t]he touching need not be done in a lewd or sexual manner" from the form jury instructions for both CALCRIM No. 1110 and No. 1120. (Judicial Council of Cal., Crim. Jury Instns. (2013) CALCRIM Nos. 1110, 1120.)

9

the prosecution must have proven, inter alia, M. "did not consent to the intercourse" and "did not consent to the act," respectively. As to both offenses, the court instructed that "[t]o consent," a person "must act freely and voluntarily and know the nature of the act."

As to the forcible rape offense, the trial court instructed the jury on withdrawal of consent as follows: "[A woman who initially consents to an act of intercourse may change her mind during the act. If she does so, under the law, the act of intercourse is then committed without her consent if: [¶] 1. She communicated to the defendant that she objected to the act of intercourse and attempted to stop the act; [¶] 2. She communicated her objection through words or acts that a reasonable person would have understood as showing her lack of consent; [¶] AND [¶] 3. The defendant forcibly continued the act of intercourse despite her objection.] [¶] [Intercourse is accomplished by force if a person uses enough physical force to overcome the woman's will.]"

The trial court did not give a similar "withdrawal of consent" instruction as to the forcible sodomy offense. Castaneda argues the trial court had a sua sponte duty to give that instruction and erred by failing to do so. No evidence, however, was presented at trial showing M., expressly or impliedly, ever consented to being sodomized (e.g., that she acted "freely and voluntarily" and "kn[e]w the nature of the act," as the jury's instructions on consent, quoted *ante*, explained). Castaneda testified he never intended to sodomize M. and he briefly sodomized her only by accident.

Even if were we to assume, for the purpose of our analysis, that the trial court erred by failing to instruct the jury on withdrawal of consent as to the forcible sodomy offense, and even if we were to further assume the trial court had a sua sponte obligation to give that instruction, any error in failing to give such an instruction was harmless under any standard. By finding Castaneda guilty of *forcible* sodomy, the jury necessarily found that Castaneda sodomized M. without her consent. M. testified she never consented to being sodomized. Castaneda testified that after he accidentally sodomized her, M. moved and told him not to do that, and he did not sodomize M. again.

10

Thus, the record did not support findings that Castaneda and M. ever engaged in consensual sodomy, M. withdrew her consent to sodomy, and Castaneda thereafter ceased engaging in that activity. Therefore, a withdrawal of consent instruction as to the forcible sodomy offense would not have helped Castaneda's defense.

Castaneda argues the prejudicial effect of the trial court's failure to instruct on withdrawal of consent as to the forcible sodomy offense is evidenced by the jury's acquittal on the forcible rape offense for which the jury received such an instruction. Castaneda argues: "The only real difference between counts one [(the forcible rape offense)] and two [(the forcible sodomy offense)] in this matter was that the trial court instructed the jurors regarding withdrawal of consent as to count one, but not as to count t[wo]. By expressly limiting instruction on the withdrawal of consent to count one, the court essentially told the jurors by negative implication that withdrawal of consent was not an issue as to count two. This court cannot find beyond a reasonable doubt that the trial court's error did not contribute to the jury's verdict on count two."

The record, however, supported giving a withdrawal of consent instruction as to only the forcible rape offense. As discussed *ante*, Castaneda testified that after he engaged in consensual vaginal intercourse with M. and accidentally sodomized her, M. moved away from him and told him to stop. He further testified that they thereafter resumed engaging in consensual vaginal intercourse. Castaneda's testimony supported giving a withdrawal of consent instruction as to the forcible rape offense because it raised the question whether M.'s conduct and statement after Castaneda sodomized her reflected not only her lack of consent to being sodomized, but also a withdrawal of her consent to engaging in further vaginal intercourse. Any failure to instruct on withdrawal of consent as to the forcible sodomy offense, therefore, constituted harmless error beyond a reasonable doubt.

11

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.