Filed 4/5/23  P. v. Trejo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BENITO RAY TREJO,<br><br>    Defendant and Appellant. | G061472<br><br>(Super. Ct. No. 99NF0024)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Jonathan S. Fish.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Benito Ray Trejo[1] on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against his client but advised the court he found no issues to argue on his behalf.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to five issues that might arguably support an appeal: (1) whether this court should conduct an independent review of the record pursuant to *Wende, supra*, 25 Cal.3d 436; (2) what is the appropriate standard of appellate review of the trial court's findings; (3) did the court err by finding the prosecution proved beyond a reasonable doubt Benito was guilty of the murder and the attempted murder; (4) did the court prejudicially err by permitting the prosecution to rely on a theory of implied malice murder; and (5) did the court commit prejudicial evidentiary error by allowing the prosecution to introduce the transcript of Benito's parole suitability hearing as part of their rebuttal case.

We gave Benito 30 days to file written argument on his own behalf, which he did. In his brief, Benito argues the following: (1) his second degree murder conviction violates the Fourteenth Amendment to the United States Constitution because

---

[1] Some of the individuals in this case share family names. To avoid confusion, we use first names.

2

there was no evidence he aided and abetted the shooting while the victim was still alive; (2) the trial court violated his Sixth and Fourteenth Amendment rights by allowing the jury to convict on a legally invalid theory of murder and attempted murder and by failing to instruct sua sponte that a principal cannot be convicted of crimes committed by others before he joined the underlying felony; (3) the case must be remanded for resentencing under newly enacted Penal Code section 1170.03[2]; and (4) the case must be remanded to consider recent legislate amendments to section 186.22.

We invited Benito and the Attorney General (AG) to file a supplemental brief addressing *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Benito and the AG agree Benito was never notified his appeal could be dismissed as abandoned if no supplemental brief was received. (*Id.* at pp. 231-232.) Both parties therefore request this court issue new no-merits orders that comply with the procedures set forth in *Delgadillo*.

We have independently reviewed the record and found no arguable issues on appeal. We affirm the postjudgment order.

FACTS

A detailed recitation of the facts is provided in our prior nonpublished opinion *People v. Trejo et al.* (Dec. 17, 2003, G028757) (*Trejo*). A brief recitation will suffice.

Johnny Julian Trejo and Rachel Seelke were dating. Rachel knew Johnny and Benito Trejo were members of the Atwood Street (AS) gang, and Edmundo Juarez was a member of the Cambridge Street (CS) gang. Johnny invited Rachel to a New Year's Eve party hosted by his gang's members, and asked her to bring her sister, Judah Seelke, and her friends, including Veronica Manzo. (*Trejo, supra,* G028757.)

---

[2] All further statutory references are to the Penal Code.

The girls drove two different cars to the street where the party was to be held. Johnny had told Rachel the street but failed to tell her the house number. Veronica drove Judah in one car while Melissa Meade drove Rachel and Paula Gano. (*Trejo, supra,* G028757.)

That night, Veronica, who had a shaved head, wore overalls and a checkered shirt over a white T-shirt. She slowly drove down the street looking for the party, made a U-turn, spoke to Rachel in the other car, and returned to the same block searching for parking. Veronica saw several men in baggy clothing running after her car—three of them had guns in their hands, including Johnny. As Johnny rapidly gained on her car, Veronica accelerated. The men shot at Veronica's car hitting it numerous times. (*Trejo, supra,* G028757.)

From a distance, Rachel and Paula saw Johnny and Juarez running towards Veronica's car carrying guns. Paula also saw Steven Fernandez, a known AS gang member, sitting on a fence. He whistled when Veronica's car drove past his location. Immediately after he whistled, the men in baggy clothing gave chase and started shooting at the car. (*Trejo, supra,* G028757.)

When Veronica accelerated, another group of men emerged and began firing at her car. Rachel recognized Benito as one of the gunmen. Rachel jumped out of her car and yelled at Johnny that they were shooting at her sister. Johnny was surprised because he thought it was rival gang members. (*Trejo, supra,* G028757.)

When Veronica was safe, she noticed her arm was bloody and bruised. She saw Judah was slumped over motionless in her seat. She touched Judah's head and discovered blood on her hand. Judah died of a single gunshot wound to the back of her head from a bullet of either a .40-caliber or 10-millimeter size. (*Trejo, supra,* G028757.)

AS gang member Maurice Henao told the police that when Fernandez warned "vatos" were cruising the street, Johnny suggested they stop the apparent rivals'

4

cars by shooting at them from the street. Later, Henao returned to the party and overheard Benito and Ronnie David Cruz bragging about having emptied their handguns at the car from their positions in the second group of shooters. Henao saw a large stash of guns taken from the gang members after their return to the party, which were then handed over the fence to get rid of them. He denied all of this at the trial, saying he failed to actually see who was doing the shooting. He also denied overhearing Benito or Cruz. (*Trejo, supra,* G028757.)

After his arrest, Johnny told the detectives various stories regarding the night's events ranging from lack of knowledge of the shooting to shooting twice at the car. Juarez also talked with the police after his arrest. Like Johnny, Juarez told the detectives various stories regarding the night's events ranging from lack of knowledge of the shooting to shooting a .38-caliber handgun about six times *over* the car. (*Trejo, supra,* G028757.)

Benito told the police he arrived at the party after the shooting, but other witnesses said Benito was at the party from the very start. Cruz told the detectives various stories regarding the night's events ranging from he was with his girlfriend to firing a single shotgun blast into the air as the suspect vehicle passed his location. (*Trejo, supra,* G028757.)

As relevant here, a jury convicted Benito of second degree murder (§ 187, subd. (a); count 1) and attempted murder (§§ 664, 187, subd. (a); count 2). We affirmed. (*Trejo, supra,* G028757.)

In 2019, Benito filed a petition for resentencing pursuant to section 1170.95.[3] The trial court denied the petition on the sole ground that Senate Bill No. 1437

---

[3] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. For clarity, we refer to the statute as section 1172.6 throughout the opinion.

5

(2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (SB 1437) was unconstitutional. We reversed. (*People v. Trejo* (June 8, 2020, G058025) [nonpub. opn.].)

On remand, the trial court ruled Benito's petition set forth a prima facie case for relief and issued an order to show cause. The court heard evidence and argument. Specifically, the court admitted into evidence the transcript from Benito's parole board hearing. At the parole board hearing, Benito admitted the night of the crimes, he had his gun out, took a shooter's stance, and started shooting at the car. He also admitted that although for a long time he denied being at the party, he was in fact at the party.

The trial court denied the petition in a written ruling. The court issued an amended written ruling again denying the petition. The court ruled the evidence established Johnny, Benito, and Cruz responded to a perceived gang threat and responded as gang members. The court further found they were part of a machine that acted in concert to kill, although without knowing the victims' identities. The court opined that although the fatal shooter was unknown, Johnny, Benito, and Cruz aided and abetted in a classic sense with a shared intent to kill. The court reasoned their response to the warning about rivals, the immediate forming of groups to shoot at the car from two different spots, and the sheer volume of shots fired demonstrated premeditation and deliberation. The court concluded, "the court finds beyond a reasonable doubt that [Judah] was murdered with premeditation and deliberation and that all three petitioners aided and abetted in the murder of [Judah] as members of the mass that mobbed and shot at the car and enabled the killing. The court finds beyond a reasonable doubt that all three petitioners had the specific intent to aid and abet and had the specific intent to kill [Judah]. The court also finds beyond a reasonable doubt that all three petitioners after premeditation and deliberation and with specific intent to kill did attempt to kill [Veronica]." Benito filed a timely motion of appeal.

6

## DISCUSSION

In *Delgadillo, supra,* 14 Cal.5th 216, our Supreme Court held the procedures in *Wende* and *Anders* do not apply to appeals from the denial of postconviction relief under section 1172.6. The court instructed that on appeal from an order denying section 1172.6 relief, a counsel who finds no arguable issue should file a brief informing the appellate court of that determination and include a concise factual recitation. (*Id.* at p. 231.) The appellate court shall send a copy of the brief to the defendant informing the defendant of the right to file a supplemental brief and that if one is not filed within 30 days, the court may dismiss the matter. (*Id.* at pp. 231-232.) If a supplemental brief is filed, we must evaluate the contentions in it. (*Id.* at p. 232.) If a supplemental brief is not filed, we may dismiss the appeal as abandoned without a written opinion. (*Ibid.*) However, we retain discretion to independently review the record. (*Ibid.*) We exercise our discretion to independently review the record.

We did not provide Benito the notice required by *Delgadillo* as our order predated *Delgadillo*. But because we exercise our discretion to independently review the record, there is no need to advise Benito of the possibility of dismissal.

SB 1437 amended sections 188 and 189, effective January 1, 2019, to eliminate natural and probable consequences liability for murder, and to limit the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*).) Under sections 188 and 189, as amended, murder liability can no longer be "imposed on a person who [was] not the actual killer," who "did not act with the intent to kill," or who "was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Lewis, supra,* 11 Cal.5th at p. 959.) SB 1437 also added section 1172.6 which, as originally enacted, set forth a procedure whereby a "person convicted of felony murder or murder under a natural and probable consequences doctrine or theory" could petition for resentencing relief. (Stats. 2018, ch. 1015, § 4.)

7

Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775), effective January 1, 2022, amended section 1172.6, subdivision (a), to expand the individuals entitled to petition for resentencing. (Stats. 2021, ch. 551, § 1, subd. (a).) Subdivision (a), of that section now expressly permits individuals convicted of attempted murder or manslaughter under a natural and probable consequences theory to file a petition for resentencing relief. A section 1172.6 petition is required to make "'a prima facie showing' for relief. [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 960.) In *Lewis, supra,* 11 Cal.5th at page 971, our Supreme Court held "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."

Benito stands convicted of both second degree murder and attempted murder, and under current law, he is entitled to petition for resentencing, which he did. There is no question he made a prima facie showing for relief and the trial court appointed counsel. It is also not disputed the court instructed the jury on the natural and probable consequences doctrine. After the filing of the petition for resentencing, the court issued an order to show cause, allowed briefing by all parties, and held an evidentiary hearing. The only issue before us is whether the court properly denied the petition on the merits.

Section 1172.6, subdivision (d)(3) provides the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, the petitioner is ineligible for resentencing. To sustain its burden, the prosecution may rely on the record of conviction or offer new or additional evidence and the judge must determine whether the prosecution has sustained its burden of proof.

Here, the trial court held the prosecution to the proper standard of proof and found beyond a reasonable doubt Judah was murdered with premeditation and

8

deliberation and that all three petitioners aided and abetted in her murder.  The court concluded beyond a reasonable doubt that all three petitioners had the specific intent to aid and abet and had the specific intent to kill Judah.  The court also found beyond a reasonable doubt that all three petitioners after premeditation and deliberation and with specific intent to kill did attempt to kill Veronica.

Although the trial court independently determines whether the prosecution met its burden to establish a defendant is not entitled to resentencing under section 1172.6, we review the court's findings for substantial evidence.  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)  "Under this familiar standard, '"we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]  We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  [Citation.]  In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'  [Citations.]  Substantial evidence also '"includes circumstantial evidence and any reasonable inferences drawn from that evidence."' [Citations.]"  (*Ibid*.)

The trial court acted as an independent fact finder to determine Benito's eligibility for relief.  The court made its factual finding based on the record of conviction applying the proper standard and found Benito was ineligible for relief.  This finding was supported by substantial evidence.

The facts as to Benito's involvement in the killing render him ineligible for relief under section 1172.6.  Relief requires a finding the petitioner was not the actual killer.  The actual killer remains unknown, but the petitioner must also show he did not

9

act with the intent to kill and that he was not a major participant in the underlying felony who acted with reckless indifference to human life. Benito cannot satisfy either of those requirements.

The evidence established that as Veronica accelerated down the street a second group of men emerged and began firing at her car. Rachel recognized Benito as one of the gunmen in this second group. Henao overheard Benito and Cruz bragging about having emptied their handguns at the car from their positions in the second group of shooters. When he spoke to the police, Benito admitted he was an AS gang member, but claimed he arrived at the party that night after all the excitement was over. This was contradicted by other witnesses who said Benito was at the party from the very start. These facts demonstrate Benito was a major participant and support a finding he acted with the intent to kill. We find the trial court's conclusion of ineligibility is supported by substantial evidence.

Counsel queries whether the trial court prejudicially erred by permitting the prosecution to rely on a theory of implied malice murder. We find no error. In *People v. Gentile* (2020) 10 Cal.5th 830, 850, our Supreme Court held second degree murder may be based on a "direct aiding and abetting theory." "Such a theory requires that 'the aider and abettor . . . know and share the murderous intent of the actual perpetrator.'" (*Ibid.*) "For implied malice, the intent requirement is satisfied by proof that the actual perpetrator '"knows that his conduct endangers the life of another and . . . acts with conscious disregard for life."'" (*Ibid.*) The court found beyond a reasonable doubt Benito aided and abetted in the murder of Judah with the intent to kill. The court also found Benito aided and abetted the attempt to kill Veronica.

Counsel's last issue relates to the trial court's admission of the transcript from the parole board. Section 1172.6, subdivision (d)(3), provides, in part, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that

10

the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."

In *People v. Myles* (2021) 69 Cal.App.5th 688, 705-706, the court explained the following:  "The Fifth Amendment privilege against self-incrimination protects persons from being compelled by '"governmental coercion"' to serve as witnesses against themselves in '"any *criminal case*."'  [Citation.]  A section [1172.6] hearing, however, '"is not a trial *de novo* on all the original charges."  [Citation.]  Rather, it is a *postconviction* proceeding "due to the Legislature's inclusion of section [1172.6] in [SB] 1437 . . . , [as] an 'act of lenity' [citation], allowing for the retroactive application of the new law governing accomplice liability for felony murder [citation] for defendants already serving valid sentences for murder."'  [Citations.]  Because a sentence modification under section [1172.6] is an act of lenity and not a criminal trial, the wrongful admission of evidence does not implicate defendant's constitutional rights under the Fifth Amendment."  Additionally, the United States Supreme Court has held the Fifth Amendment applies through original sentencing but has stated that incrimination is complete in cases in which the sentence has been fixed and the judgment of conviction has become final.  (*Mitchell v. United States* (1999) 526 U.S. 314, 326.)

Here, the trial court did not err by admitting the transcript of Benito's parole suitability hearing.  We now address the issues Benito raises in his supplemental brief.

I. *Fourteenth Amendment*

Benito argues his second degree murder conviction violates the Fourteenth Amendment because there was no evidence he aided and abetted the shooting while the victim was still alive.  In the initial appeal, Benito asserted the same argument arguing the evidence was insufficient he aided and abetted the perpetrator before the victim was

11

dead. (*Trejo, supra,* G028757.) We rejected that claim on the merits. We reasoned that this argument assumes Judah was killed in the first volley of shots and that anyone who shot at the car thereafter was not responsible for the death. We explained on review for the sufficiency of evidence, "appellate courts must review 'the whole record in the light most favorable to the judgment' and decide 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Hatch* (2000) 22 Cal.4th 260, 272.) After conducting the appropriate review, we found the evidence was sufficient to sustain the jury's finding. (*Trejo, supra,* G028757.)

## II. Jury Instruction

Benito contends the trial court erred by failing to instruct the jury sua sponte that a principal cannot be convicted of crimes committed by others before he joined the underlying felony. This issue was also raised and rejected in his previous appeal. (*Trejo, supra,* G028757.) In rejecting this claim, we found Benito was focused solely on his version of the evidence and overlooked all the contradictory evidence. Viewing the whole record as we must, we rejected this claim. (*Ibid.*)

Benito raised his Fourteenth Amendment claim and his claim of instructional error in his appeal, and both claims were rejected. Collateral estoppel prohibits relitigation of issues argued and decided on their merits in prior proceedings. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341-343.)

## III. Sections 1170.03 and 186.22

Benito asserts that because section 1170.03 increased the trial court's authority to modify the judgment and requires the court to take into account he was a youth at the time of the offense, his case must be remanded. He also argues his case must

12

be remanded due to recent amendments section 186.22 relating to the gang enhancements.

Neither of these statutory changes were raised in the trial court. In order for an appellate court to make a determination of whether the trial court erred, there must be a record that demonstrates what the trial court's decision-making process was in reaching its conclusion. In cases such as this, where the issues were not raised in the trial court, we are left without any ability to evaluate the trial court's decision. (*People v. Nelson* (2011) 51 Cal.4th 198, 227.) Therefore, we do not address these claims.

We have reviewed the record pursuant to *Wende, supra,* 25 Cal.3d 436, and *Anders, supra,* 386 U.S. 738, and considered the possible issues raised by appellate counsel. We found no arguable issues on appeal.

## DISPOSITION

The postjudgment order is affirmed.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

MOORE, J.

13