Filed 9/13/24  P. v. Boyd CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B324316 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA067912) |
| v. | |
| DERRICK DWIGHT BOYD, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed on September 5, 2024, be modified as follows:

The second sentence on the caption page, which reads, "Affirmed in part, reversed in part, and remanded," is revised to read "Affirmed as modified."

The following sentence is added at the end of the paragraph following the "DISPOSITION" heading on page 16:

Pursuant to the parties' stipulation, the remittitur shall issue forthwith. (Cal. Rules of Court, rules 8.272(c)(1), 8.366(a).)

There is no change in judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.

Filed 9/5/24  P. v. Boyd CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B324316 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA067912) |
| v. | |
| DERRICK DWIGHT BOYD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Allen Joseph Webster, Jr., Judge.  Affirmed in part, reversed in part, and remanded.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant Derrick Dwight Boyd (defendant) of the first degree murder of Joel Garcia (Garcia). The jury also found true a robbery-murder special circumstance allegation, a gang enhancement allegation, and "principal armed" firearm allegations (Pen. Code,[1] § 12022.53, subd. (e)(1)).[2] The trial court sentenced defendant to life in prison without the possibility of parole for the murder, plus 25 years to life in prison for the "principal armed" firearm enhancement. Years later, as a result of changes in felony murder law, defendant petitioned for resentencing under section 1172.6 (former section 1170.95). The trial court granted the petition, vacated the murder conviction, and substituted in its place a conviction for robbery. On that conviction, the court then resentenced defendant to 30 years to life: five years for the robbery plus 25 years to life for the same "principal armed" firearm enhancement. Now on appeal from that resentencing, the parties agree the sentencing enhancement must be vacated because the evidence does not satisfy the heightened requirements for proving a gang enhancement after passage of Assembly Bill No. 333 (2021-2022 Reg. Sess.) (AB 333), which took effect on January 1, 2022—before the resentencing. We shall modify defendant's sentence accordingly.

---

[1]     Undesignated statutory references that follow are to the Penal Code.

[2]     Section 12022.53, subdivision (e)(1) provides that the firearm enhancements in that section apply to a person who is "a principal in the commission of an offense" (not just the actual firearm user or shooter) if the person is also found to have violated the gang enhancement statute (section 186.22) and an accomplice was the actual firearm user or shooter.

# I.  BACKGROUND

*A.      The Offense Conduct, Trials, and Sentencing*

On the evening of December 22, 2002, four members of the 10 Line Gangster Crips street gang (10 Line) were standing on 110th Street in Los Angeles.  One of the gang members, Sabino "Flip" Bahadur (Bahadur), was armed with a pistol, which he brandished openly.  Residents of the neighborhood who were outdoors at the time either went inside or hurried home.

Garcia turned onto 110th Street in his automobile and stopped to ask for directions.  At that point, the four gang members swarmed his vehicle.  Bahadur and two other gang members approached the vehicle from the driver's side, demanded money, and reached inside Garcia's window.  When the gang member on the opposite side of the vehicle attempted to open the passenger door, Garcia pressed down on the accelerator.  As the car moved forward, Bahadur shot Garcia and his vehicle crashed into a tree.  As the four gang members fled the scene, one of the neighborhood's residents who witnessed the shooting called 911 and later identified Bahadur to the police as the shooter.

Defendant was arrested after the police first arrested and interviewed Bahadur and another gang member.  Defendant initially denied any involvement in Garcia's death.  After being advised by the police that they had an eye witness and two other people in custody, however, defendant admitted during a recorded interview that he participated in the crime.  He explained that on the day of the shooting, he was with Bahadur and two others, they had a gun, and they were looking to rob someone.  After Garcia stopped, asked them for directions, and made a u-turn, defendant and the others decided to rob Garcia.  While the other three men confronted Garcia from the driver's

side of the vehicle and yelled at him not to move or they would kill him, defendant approached the car from the passenger's side. According to defendant, "something happened," the vehicle moved, and Bahadur shot Garcia in the head.[3]

The District Attorney charged defendant, Bahadur, and two other men with Garcia's murder (§ 187, subd. (a)). The information also alleged the murder was committed while the defendants were engaged in a robbery (§ 190.2, subd. (a)(17)), a principal personally and intentionally used and discharged a handgun that caused great bodily injury and death (§ 12022.53, subds. (b)-(e)), and the murder was gang-related (§ 186.22, subd. (b)(1)).

Defendant, Badhur, and another co-defendant were tried together. The jury found Bahadur guilty and found true the robbery-murder special circumstance allegation, the gang allegation, and the allegation that he personally used a handgun (§ 12022.53, subds. (b)). The jury was unable to reach a verdict on the charges against defendant and the co-defendant.

In the spring of 2004, defendant was retried alone. Officer Scott Stevens, a gang enforcement officer assigned to the Los Angeles Police Department's Southeast Division, testified as an expert on criminal street gangs.[4] For almost three years, Officer Stevens had been assigned to monitor 10 Line. He described for the jury the gang's history, size, and primary criminal activities,

---

[3] Defendant related the same facts to his expert forensic psychiatrist.

[4] Both of the detectives that investigated Garcia's shooting testified at defendant's second trial, but neither offered any expert gang testimony.

which included "narcotics sales, street robberies, [and] gang robberies which result in shootings, homicides."  In addition, Officer Stevens, who had dozens of contacts with defendant, identified him as a member of 10 Line and described him as a "player," i.e., a "very active" member of the gang who was known by the moniker "Dirty D."

To establish the predicate pattern of gang crimes that must be proven under then-prevailing law, Officer Stevens testified about four sets of crimes committed by other members of 10 Line: a robbery and rape by force; a robbery, attempted robbery, and rape by force; possession of a firearm and possession of a firearm in school; and kidnapping and lewd acts with a child.  In each instance, when presented with a certified record of the convictions, Officer Stevens identified the offender as a member of the gang.

Toward the end of Officer Stevens's direct examination, the prosecution asked him to offer an opinion on whether several hypothetical scenarios designed to track the facts of Garcia's murder would be gang-related.  When asked if it would be common for four members of 10 Line to approach a vehicle from both sides and attempt to rob the driver at gunpoint, Officer Stevens opined that such an event would be "one of the most common activities" engaged in by the gang.  He explained that such a crime would benefit the gang by instilling fear in the driver and in the surrounding community, including any local rival gangs.  He opined further that the reputational benefit to the gang would be even greater under the hypothesized scenario if one of the gang members shot the driver after he became frightened and attempted to drive away; such an act would establish the gang's "dominance" by showing others that "it's a

10th [Line] world. It's our rules." Finally, Officer Stevens opined that 10 Line would expect all members present during such a hypothetical street robbery-murder to participate in the crime.

The trial court did not instruct the jury on malice murder; it instructed on felony murder only. In addition, the court instructed the jury on the two essential elements of the alleged gang-related crime enhancement as follows: "One, that the crimes charged were for the benefit of, at the direction of, or in association with the criminal street gang. [¶] And two, that this crime was committed with the specific intent to promote, further, or assist any criminal conduct by gang members."

During closing argument, the prosecutor discussed the charged gang enhancement and argued defendant committed the robbery-murder to benefit the gang: "10 Line Gangster Crips robs people. They rob people in cars." The prosecution argued the crime was committed by the gang in front of people in the neighborhood to "scare[ ] people off the street," to "show them something," to "show[ ] who they are," and to show "what this gang can do." Defendant participated in the robbery-murder, the prosecution argued, because he was a member of the gang, "part of the team," and "the robbery involve[d] terrifying persons in a car. [¶] You surround the car. You increase the fear."

On June 7, 2004, the jury found defendant guilty of first degree murder and found true all of the alleged sentencing enhancements, including the gang-related allegation. Pursuant to the true finding on the robbery-murder special circumstance finding, the court sentenced defendant to life without the possibility of parole for Garcia's murder. In addition, the court imposed a consecutive sentence of 25 years to life in connection with the jury's finding that "a principal" personally and

6

intentionally discharged a handgun for the benefit of a criminal street gang that caused great bodily injury and death to Garcia. Punishment for the remaining gang-related, principal-armed firearm findings and the gang finding itself was stayed pursuant to section 654. The judgment was affirmed on direct appeal.

### B. Defendant's Petition for Resentencing

In June 2019, 15 years after he was convicted, defendant petitioned for resentencing. Using a form petition, defendant declared an information was filed against him that allowed the prosecution to proceed under a theory of felony murder, he was convicted of murder following a trial, and he could not presently be convicted of murder as a result of changes to murder law taking effect in 2019. Defendant additionally declared he was not the actual killer, did not act with the intent to kill, and was not a major participant in the felony who acted with reckless indifference to human life during the course of the felony.

The trial court, without appointing counsel for defendant (as he requested) or holding an evidentiary hearing, summarily denied defendant's petition. The court ruled defendant was not eligible as a matter of law for resentencing because he "manifested an intention to kill" and "displayed reckless indifference to human life" by aiding and abetting his fellow gang members and the actual killer.

On appeal, a different panel of this court, reversed the denial of defendant's petition and remanded for further proceedings. The panel held defendant was entitled to appointment of counsel and a hearing at which his attorney could present evidence beyond the existing trial record.

7

The trial court appointed counsel for defendant on remand, and the attorney filed a supplemental request for relief. Defense counsel argued his client was entitled to resentencing because he was not the actual killer and was not a major participant in Garcia's murder. As the defense argued it, defendant's admission to participating in the crime was limited to a concession that he merely stood next to Garcia's vehicle when the shooting occurred. The District Attorney submitted a supplemental opposition, which argued that while defendant was not the actual killer he was nonetheless guilty of felony murder because he was a major participant in the crime who acted with reckless indifference to human life.

At a hearing held in April 2022, the trial court granted defendant's petition. The court found that, based on the totality of the circumstances revealed by the record before it (the transcripts of defendant's criminal trial), there was insufficient proof defendant acted with reckless indifference to human life. At a subsequent hearing in August 2022, the court vacated defendant's murder conviction and amended the criminal information by interlineation to add a second degree robbery charge (the felony underlying the felony murder theory). As so amended, the robbery charge was accompanied by gang (§ 186.22, subd. (b)(1)) and firearm (§ 12022.53, subds. (b)-(e)(1)) sentencing allegations. The court then redesignated defendant's conviction as a conviction for robbery with an enhancement that a principal personally and intentionally discharged a handgun for the benefit

8

of a street gang causing great bodily injury and death
(§ 12022.53, subds. (d) & (e)(1)).[5]

The court sentenced defendant to 30 years to life in prison: the upper term of five years in prison for the robbery and 25 years to life in prison for the gang-related firearm enhancement. The court stayed punishment for the gang and other "principal armed" firearm enhancements.

## II.  DISCUSSION

Defendant presents several arguments for consideration, but the only one we need address is his contention that there is insufficient evidence to support sentencing enhancements originally alleged and found true by the jury and imposed by the trial court upon resentencing: the section 186.22, subdivision (b)(1) gang enhancement and the section 12022.53, subdivision (d) and (e)(1) "principal armed" firearm enhancement.  Defendant argues the evidence before the trial court does not meet the

---

[5]    The minute order from the hearing states that defendant was convicted of first degree robbery.  The reporter's transcript of the hearing and the subsequent abstract of judgment reflect the trial court found defendant guilty of second degree robbery. Where there is a discrepancy between a court's oral pronouncement and what is recorded in the minutes, the oral pronouncement prevails.  (*People v. Price* (2004) 120 Cal.App.4th 224, 242.)  Accordingly, we order the minute order corrected to reflect the second degree robbery offense for which defendant was found guilty.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [reviewing courts have the inherent power on appeal to correct clerical errors found in court records whether on the court's own motion or upon application of the parties].)

9

heightened requirements for proving a gang enhancement under the amendments made by AB 333—which took effect months before he was resentenced. Defendant further argues that, with insufficient proof of the gang enhancement, the firearm enhancement that depends on the validity of the gang enhancement must fall too. This is all correct. Indeed, the Attorney General concedes the trial evidence is insufficient to support the gang and gang-related firearm enhancements the trial court imposed after AB 333. Defendant, for his part, concedes his remaining arguments are rendered moot by the Attorney General's concession of error. That too is correct. So we shall affirm defendant's redesignated robbery conviction and order his sentence modified to strike all sentencing enhancements.[6]

### A.    *Resentencing Under Section 1172.6*

"[A] successful petitioner [under section 1172.6] who was charged with murder 'generically, and the target offense was not charged' is entitled to have the murder conviction 'redesignated' as 'the target offense' of the natural and probable consequences

---

[6]    There is no reason to remand for resentencing because the trial court imposed a high-term sentence for the robbery conviction and our Supreme Court has recently held that uncharged, unproven enhancements cannot be imposed at a section 1172.6 resentencing. We also believe retrial of the sentencing enhancements, which fail for insufficient evidence, is not permitted in this case. (See *Burks v. United States* (1978) 437 U.S. 1, 16-17; *People v. Hatch* (2000) 22 Cal.4th 260, 272; see also *In re I.A.* (2020) 48 Cal.App.5th 767, 780 [reversing findings without any opportunity for a redetermination on remand].)

10

theory—or the 'underlying felony' of the felony murder—and to be resentenced accordingly. (*Id.*, subd. (e).)" (*People v. Arellano* (2024) 16 Cal.5th 457, 464.) *Arellano* holds that when such a redesignation occurs, a resentencing under section 1172.6, subdivision (e), like a resentencing under subdivision (d)(3), "does not contemplate the addition of an enhancement or an allegation that was not previously found to be true." (*Id.* at 470.)

We, of course, confront the opposite scenario in this appeal: gang and firearm sentencing enhancements that were alleged and were previously found true by the jury. Although the trial court's imposition of the section 12022.53, subdivision (d) and (e)(1) enhancement in this case therefore does not run afoul of *Arellano*'s holding, the enhancement imposed by the trial court must still be supported by sufficient evidence. (See *People v. Del Rio* (2023) 94 Cal.App.5th 47, 50-51, 56 [redesignated robbery conviction, following vacatur of a murder conviction, unsupported by substantial evidence]; *I.A.*, *supra*, 48 Cal.App.5th at 775 ["[f]ull and effective appellate review" requires that redesignated offenses are "proven beyond a reasonable doubt" and "are supported by substantial evidence on appeal"].) As we next explain, that is what is lacking. There was insufficient evidence introduced during the section 1172.6 proceedings, when AB 333's amendments had already taken effect, to justify imposition of the gang and firearm enhancements alleged against defendant.

B.     *The Section 186.22 Gang Enhancement Lacks*
       *Sufficient Evidentiary Support, As Does the*
       *"Principal Armed" Firearm Enhancement That*
       *Depends on the Gang Enhancement*

At the time of defendant's trial in 2004, section 186.22 defined "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."  (Former § 186.22, subd. (f).) With regard to a "pattern of criminal gang activity," the prosecution at defendant's second trial had to prove only that those associated with 10 Line had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another.  (Former § 186.22, subd. (e) [defining "pattern of criminal activity" as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons"].)

As our Supreme Court has recently observed, the Legislature "substantially amended the STEP Act in [AB 333]." (*People v. Clark* (2024) 15 Cal.5th 743, 752.)  "'First, it narrowed the definition of a "criminal street gang" to require that any gang

12

be an "ongoing, *organized* association or group of three or more persons." (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members "individually or collectively engage in" a pattern of criminal activity in order to constitute a "criminal street gang," [AB 333] requires that any such pattern have been "*collectively* engage[d] in" by members of the gang. (§ 186.22, subd. (f), italics added.) Third, [AB 333] also narrowed the definition of a "pattern of criminal activity" by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang "members," as opposed to just "persons"; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, [AB 333] narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any "common benefit" be 'more than reputational.' (§ 186.22, subd. (g).)' [Citation.]" (*Id*. at 752-753.) "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

Our Supreme Court held in *Clark* that the Legislature's reference to collective engagement in a pattern of criminal activity "calls for an inquiry not just into how the predicate offenses benefited the gang, but also how the gang works together *as a gang*. It calls for a showing of a connection, or nexus, between an offense committed by one or more gang members and

13

the organization as a whole." (*Clark, supra*, 15 Cal.5th at 762.) The *Clark* court went on to explain that this organizational nexus "may be shown by evidence linking the predicate offenses to the gang's organizational structure, meaning its manner of governance; its primary activities; or its common goals and principles."[7] (*Ibid*.)

The record before the trial court during the section 1172.6 proceedings lacks sufficient evidence to support the section 186.22, subdivision (b)(1) (as amended by AB 333) gang allegation. Officer Stevens, the prosecution's gang expert, testified about 10 Line's history, size and primary criminal activities. He did not (understandably, under then-prevailing law) offer any testimony about the gang's organizational structure or how the gang's members collectively engaged in criminal activity generally or in specific connection with the four predicate crimes. Officer Stevens opined that the gang benefited from the hypothetical crime tracking the facts of Garcia's murder by enhancing its reputation for ruthlessness, but did not (again, understandably) address any benefit to 10 Line provided by the predicate criminal acts or establish the nature of any such

---

[7] *Clark* offered a number of examples of how collective engagement might be established: "[T]here might be evidence of a direct order from the gang to commit specific crimes. [Citations.] Alternatively, evidence might show a more general, well-understood expectation that members must engage in certain types of offenses. [Citation.] In other cases, collective engagement might be shown by demonstrating that the offenses are reflective of the primary activities of the gang, or else adhere to a common goal or plan characteristic of the gang in question. [Citations.]" (*Clark, supra*, 15 Cal.5th at 762.)

14

benefit.  Besides reputational gain, Officer Stevens did not identify any other advantage that might have inured to 10 Line's benefit from the hypothesized murder-robbery.

Because there is no substantial evidence of 10 Line's organization, the organizational nexus between the gang and the crimes committed by its members, and any nonreputational benefit to the gang from the predicate crimes and Garcia's murder, vacatur of the true finding on the section 186.22 gang allegation is required.  Because the evidence is insufficient to support the gang enhancement, the related firearm enhancements are also infirm and must be vacated as well.  (See, e.g., *People v. Cooper* (2023) 14 Cal.5th 735, 745-747 [reversing section 12022.53, subdivision (e)(1) firearm enhancement that was contingent on a true finding on the gang enhancement under section 186.22].)

## DISPOSITION

Defendant's conviction for the redesignated offense of robbery is affirmed. Defendant's sentence is modified to strike all sentencing enhancements, i.e., the section 186.22, subdivision (b)(1) gang enhancement and all firearm enhancements under section 12022.53, whether stayed or not. The trial court is to prepare an amended abstract of judgment reflecting these modifications and deliver the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

16