Filed 4/24/25  P. v. Dean CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C098126 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STKCRFE19930006815 & SC056619A ) |
| v. | |
| ANTHONY LAMAR DEAN, | |
| Defendant and Appellant. | |

Defendant Anthony Lamar Dean appeals the denial of his petition for resentencing after an evidentiary hearing pursuant to Penal Code section 1172.6, subdivision (d).[1]  He contends the evidence was insufficient to prove he is guilty of felony murder beyond a

---

[1]     Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute.  Although defendant filed his petition under former section 1170.95, we cite the current section 1172.6 throughout this opinion.

Undesignated section references are to the Penal Code.

1

reasonable doubt.  We agree.  As we explain, because the personal use of a firearm allegations were dismissed and functioned as an acquittal of those allegations, we are precluded from considering facts that defendant used a gun that day or was the actual killer.  Accordingly, defendant's participation in the armed robbery consisted of sharing his gun with codefendant Tim Jones but, when a struggle ensued between the victim and codefendant, defendant ran away before the murder.  Apart from the threat of violence inherent to any armed robbery, there is no evidence that defendant's participation in the felony supports a conclusion that he knowingly created and then disregarded a grave risk of death.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)  In short, this encounter was a "garden variety armed robbery" and defendant is entitled to be resentenced.  (See *People v. Clark* (2016) 63 Cal.4th 522, 617 (*Clark*).)

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted defendant of murder (§ 187) and second degree robbery (§ 211) and found true the special circumstance allegation of felony-murder (§ 190.2).  The jury was unable to reach a finding on whether defendant personally used a firearm in the commission of both crimes (§ 12022.5), and the court struck those allegations.  The trial court sentenced defendant to life without parole on the murder and three concurrent years on the robbery.  After defendant appealed, we affirmed his conviction and modified his sentence to stay the three-year robbery term.  (*People v. Dean*, C019620, May 28, 1996 [nonpub. opn.].)

In 2020, defendant filed the instant petition under section 1172.6.  The trial court issued an order to show cause and held an evidentiary hearing.  At the hearing, the prosecution submitted its own partially complete copies of trial transcripts and two audio recordings of police interviews, through which the following was adduced.

In November 1992, a 20-year-old man (victim) cashed his paycheck and went to buy beer at a liquor store.  Because he was underage, victim asked defendant and codefendant to buy the beer for him.  Defendant, who "needed some money," and

2

codefendant saw the cash in victim's wallet and decided to rob him. During the robbery, one of the perpetrators shot victim. Both defendant and codefendant fled. Victim died from a single .32 caliber gunshot wound to the chest. Fingerprints from both defendant and codefendant were found at the scene.

Defendant went to his aunt's home. His cousins (cousin 1 and cousin 2) were there. He was scared, out of breath, and asked cousin 1 to dispose of the shirt he had been wearing. Defendant put on a different shirt and hat and said, "You ain't seen me and you ain't heard from me." Cousin 1 cut up and burned defendant's shirt in the fireplace because it was "evidence."

After the shooting, defendant's friend (friend) was in a car with defendant and codefendant and overheard defendant ask codefendant why codefendant shot victim when all he had to do was get the money. Codefendant said he had to shoot victim so victim would not get the gun and shoot him. Defendant thought he saw more in victim's wallet than codefendant said he took, and codefendant thought he should get more because he shot victim and defendant ran away. Defendant said he ran away because he saw victim knock the gun out of codefendant's hand. Friend saw a gun in codefendant's waistband and it looked like defendant's black .38 or .32 caliber gun. About a month prior to the shooting, defendant's cousin (cousin 3) saw defendant with a .32 caliber "black short and a .357 magnum."

Defendant left the state.

At trial, defendant's mother provided a recording of codefendant admitting he robbed and shot victim. She received several threats from someone incarcerated with codefendant warning her that no one should testify against codefendant. She heard that codefendant was associated with a gang and she was afraid of retaliation.

Aunt was also afraid of codefendant. When asked if codefendant was "pretty violent," she responded, "ugly." Codefendant also threatened to shoot cousin 3 if he said anything to the police.

3

Cousin 1, who had seen defendant with a chrome-plated gun a day or two before the shooting, was afraid of defendant. Another witness said she was threatened against testifying about defendant at trial.

The trial court found that the prosecution proved beyond a reasonable doubt that defendant was a major participant who acted with reckless indifference in the armed robbery of victim, which led to his murder.

Defendant timely appealed.

## DISCUSSION

### I

*Standard of Review*

Twenty-five years after defendant was sentenced, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) " 'to more equitably sentence offenders in accordance with their involvement in homicides.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448.) "Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . [s]ection 190.2'—that is, the statute defining the felony-murder special circumstance. ( . . . § 189, subd. (e)(3).)" (*People v. Strong* (2022) 13 Cal.5th 698, 708.) After defendant's conviction became final, *People v. Banks* (2015) 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522) "substantially clarified the law governing findings under . . . section 190.2, subdivision (d): *Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Strong*, at pp. 706-707.)

Senate Bill 1437 also created a procedural mechanism for defendants with eligible murder convictions to seek retroactive relief under the amended law. (*Strong, supra*, 13 Cal.5th at p. 708.) Under section 1172.6, if a petitioner makes a prima facie showing

of entitlement to relief, the trial court must issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the law as amended by Senate Bill 1437.  (§ 1172.6, subd. (d)(3).)

We review a trial court's denial of a section 1172.6 petition for substantial evidence.  (*People v. Njoku* (2023) 95 Cal.App.5th 27, 42.)  We presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial.  (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022; see also *Clark, supra*, 63 Cal.4th at p. 610.)

II

*Dismissal of Firearm Allegations*

Defendant contends he was functionally acquitted of the personal use of a firearm allegations and, accordingly, the trial court was precluded from considering evidence that he used a gun or was the actual killer.  We agree.

Section 1385 dismissals should not be construed as an acquittal for legal insufficiency unless the record clearly indicates the trial court applied the substantial evidence standard.  (*People v. Hatch* (2000) 22 Cal.4th 260, 271, 273.)  If the jury was not able to reach a verdict and the trial court rules the evidence is insufficient as a matter of law to sustain a conviction, the ruling bars retrial even if the ruling is patently erroneous or the court has no statutory authority to make it.  (*Id.* at pp. 270-271.)  "The court's stated reason for dismissing the allegation 'is the strongest evidence of the grounds for the dismissal.' [Citation.]"  (*People v. Hampton* (2022) 74 Cal.App.5th 1092, 1105.)

Here, the jury was unable to reach a verdict on allegations that defendant personally used a firearm and the prosecutor filed a memorandum requesting the court strike the allegations for insufficiency of the evidence.  A minute order states "pursuant to a memorandum received . . . it is hereby ordered that allegations pursuant to 12022.5 be

5

stricken." Contrary to the People's argument, the record indicates the basis for the trial court's ruling. Because the order specifically references the memorandum, and the memorandum itself requested striking the allegations for insufficiency of the evidence, we conclude this was a dismissal based on the insufficiency of the evidence, which acts as the functional equivalent of an acquittal. (See *People v. Hampton, supra*, 74 Cal.App.5th at p. 1106 [the original trial court's dismissal of a special circumstances allegation for "insufficiency of the evidence" acted as the equivalent of an acquittal for purposes of resentencing eligibility considerations under section 1172.6].)

Accordingly, because we are precluded from considering evidence that defendant personally used a firearm during the robbery, we have omitted the facts supporting such a conclusion. (Cf. *People v. Curiel*, *supra*, 15 Cal.5th at p. 465 ["If the jury has made a factual finding, and it is issue preclusive under the principles described above, a court must give effect to that finding"]; see also *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017-1020 [jury's not true finding on the allegation that the defendant personally used a firearm barred the court from concluding in a section 1172.6 resentencing proceeding that she did use a firearm].)

### III

### *Felony Murder*

Defendant contends that, at most, the evidence shows he participated in a spontaneous armed robbery, but the evidence does not show that his participation was major or that he harbored a willingness to kill to achieve a distinct aim and thus does not satisfy the elements of felony murder. We need not decide whether defendant was a major participant because we conclude that the evidence was insufficient to support that he exhibited reckless indifference to human life. (See *Clark, supra*, 63 Cal.4th at p. 611.)

A.     Additional Background

The resentencing court found that when victim asked defendant and codefendant to buy beer for him, they "became aware of the large sum of money that was in [victim's]

wallet and decided to rob him" and defendant agreed to the plan. The court inferred that codefendant had defendant's gun on the night of the shooting. The court also stated, "with regard to the awareness of the particular dangers posed by the nature of the crime, there [were] a lot of statements made after the events with regarding [codefendant], his propensity for violence," including a discussion regarding codefendant's association with a prison gang. The court also found defendant's post-robbery conduct significant, including running away *after* the shooting, obtaining a new shirt and hat, directing his cousins to destroy his shirt and pretend that they hadn't seen him, and splitting the money with codefendant before leaving town. The court expressly and repeatedly assumed defendant was not the actual killer.

B.      Analysis

Reckless indifference to human life is " 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*Clark, supra*, 63 Cal.4th at p. 616.) It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617.) In this context, recklessness has both a subjective and an objective component. (*Ibid*.) Subjectively, " '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citation]." (*Scoggins, supra*, 9 Cal.5th at p. 677.) Objectively, recklessness is determined by whether defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Clark,* at p. 617.)

We consider a number of factors in determining whether the evidence is sufficient to establish reckless indifference: (1) the use and number of weapons and the defendant's knowledge of them, (2) the defendant's physical presence at the scene of the killing and opportunities to stop the crime or aid the victim, (3) the duration of the felony,

(4) defendant's knowledge that his criminal partner was likely to kill, and (5) the defendant's effort to minimize the risk of the felony. (*Clark, supra*, 63 Cal.4th at pp. 618-623.) As with the major participant factors, " '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Id*. at p. 618.) "Since *Clark*, courts have discerned an additional factor that may be relevant to the reckless indifference analysis — the defendant's youth." (*People v. Keel* (2022) 84 Cal.App.5th 546, 558.)

Applying the *Clark* factors here, the evidence supports the inference that defendant had knowledge of the single firearm used in the armed robbery and even, at some point, shared it with codefendant. About a month before the shooting, defendant had a black gun that was the same caliber firearm that killed victim and, after the shooting, codefendant had a black firearm in his waistband that looked like defendant's gun. (See *Clark, supra*, 63 Cal.4th at p. 626 [we must accept reasonable inferences].) The use of a firearm during an armed robbery is an important consideration but, as the Supreme Court in *Clark* stated, there must be something "in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery" to show reckless indifference for human life. (*Id.* at p. 623.) We do not have elevating circumstances here, particularly where the robbery was spontaneous and short-lived.

"Proximity to the murder and the events lea ding up to it may be particularly significant where . . . the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force." (*Clark, supra*, 63 Cal.4th at p. 619.) Although defendant was present at the start of the robbery, defendant said he ran away when he saw victim knock the gun out of defendant's hand.[2] This evidence

---

[2] Because defendant was functionally acquitted of personal use of a firearm, we do not consider cousin 3's statement that he saw defendant shoot the victim.

demonstrates he was not present to intervene with codefendant's later use of lethal force. (Compare *Clark, supra*, 63 Cal.4th at p. 620 [facts supported a lack of reckless indifference where the defendant was not present during the shooting and there was no evidence to suggest he instructed use lethal force and had no opportunity to prevent the victim's killing] with *People v. Mitchell* (2022) 81 Cal.App.5th 575, 594 [the defendant's act of robbing the victim while the victim lay bleeding unambiguously showed indifference].) Thus, the resentencing court's finding that defendant ran away *after* the shooting is not supported by the evidence. Indeed, the People appear to concede this point.

Further, to the extent the trial court relied on codefendant's dangerousness as evidence that defendant knowingly created a grave risk of death by participating in the robbery with him, that is unsupported by substantial evidence. Although the evidence showed that codefendant or his associates threatened witnesses against implicating him at trial, the record does not disclose any reason why codefendant should have been considered dangerous apart from those warnings not to testify. The nature and timing of those warnings sheds little light on whether codefendant was dangerous at the time of the robbery. And although aunt described codefendant as "ugly" when asked if he was "pretty violent," no context is provided for aunt's description. Nor is there any evidence defendant knew of codefendant's "ugl[iness]" or evidence regarding the nature of defendant's relationship with codefendant such that we can infer defendant's knowledge when he agreed to rob victim. Even if defendant had knowledge codefendant was prone to some degree of violence, "[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient" to satisfy the reckless indifference to human life element. (*Scoggins, supra*, 9 Cal.5th at p. 682.) Here, not even codefendant's admissions show proclivity to violence as he explained that he shot victim so that he would not be shot.

9

Similarly, the evidence does not establish that defendant himself was dangerous such that his participation in the armed robbery demonstrated disregard of a grave risk of death created by his actions. Cousin 1 admitted she was afraid of defendant, but there is no evidence as to why. Although another witness said she was threatened and warned not to testify against defendant, there is no evidence that defendant instigated these threats, was aware of them, or had the inclination to carry them out.

As to defendant's post-robbery actions, the evidence does not shed any light on whether defendant knowingly created then disregarded a grave risk of death. (*Scoggins, supra*, 9 Cal.5th at p. 679.) To be sure, he changed his clothes, ordered the destruction of evidence, divided the proceeds of the robbery with codefendant, and left town. Yet even viewed in the light most favorable to the ruling, this evidence shows an after-the-fact consciousness of guilt for the robbery that resulted in a killing. We do not ascertain any indication of defendant's knowledge that the violent manner in which the robbery would be committed carried a grave risk of death. (See *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 130; see also *In re Taylor* (2019) 34 Cal.App.5th 543, 559 [behavior after the fact may reveal indifference to the victim's death, while reprehensible, does not show he acted with reckless disregard to the risk to human life posed by the felony].) Indeed, after the shooting, defendant expressed surprise, asking codefendant why he shot victim when all he had to do was get the money.

Our Supreme Court explained that the phrase "garden variety armed robbery" applies when "the only factor supporting reckless indifference to human life is the fact of the use of a gun." (*Clark, supra*, 63 Cal.4th at p. 617, fn. 74.) The circumstances of this case fit that definition. The shooting was unplanned and happened after the gun fell during a struggle when victim resisted during the robbery. As defendant fled before the use of lethal force and there was no other indicia of dangerousness, defendant's actions do not demonstrate a willingness to kill to achieve the robbery. (*Id.* at p. 618.)

10

In light of our conclusion that defendant is entitled to be resentenced, we need not address his remaining arguments.

DISPOSITION

We reverse the trial court's order denying defendant's petition for resentencing under section 1172.6. The case is remanded to the trial court to vacate defendant's murder conviction and resentence him accordingly.


/s/
MESIWALA, J.


We concur:


/s/
ROBIE, Acting P. J.


/s/
MAURO, J.